The **CHEYENNE NEWSPAPERS, INC.**,
Petitioner-Appellant,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent-Appellee.

No. 73–1585.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Jan. 8, 1974.

Decided March 12, 1974.

Gene W. Reardon, Denver, Colo., for petitioner-appellant.

William S. Estabrook, III, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks and Richard W. Perkins, Tax Div., Dept. of Justice, Washington, D. C., on the brief), for respondent-appellee.

Before HILL, HOLLOWAY and BARRETT, Circuit Judges.

HILL, Circuit Judge.

This is an appeal by The Cheyenne Newspapers, Inc. (taxpayer) from a Tax Court decision sustaining the Commissioner's determination of income tax deficiencies for 1965, 1966 and 1967 in the amounts of $32,109.68, $31,191.00 and $12,638.00, respectively.

The deficiencies resulted from the Commissioner's imposition of an accumulated earnings tax, pursuant to § 531 of the Internal Revenue Code of 1954,[1] for each of the years in issue. The tax court found taxpayer had permitted its earnings and profits to accumulate beyond the reasonable needs of its business[2] and that it was availed of during the years in question for the purpose of avoiding the income tax with respect to its shareholders by permitting earnings to accumulate instead of being divided and distributed.[3]

Taxpayer, a Wyoming corporation, is in the newspaper publishing business in Cheyenne, Wyoming. Since its inception in 1928 it has published a morning newspaper Tuesday through Saturday, and a daily evening newspaper. Sometime during 1963 taxpayer's board of directors began to consider the need to remodel and expand the plant's facilities. Beginning in 1965, and over a period of years thereafter, taxpayer's facilities were indeed expanded and modernized, publication of a Sunday edition was started, and an offset press was purchased and installed. Accordingly, taxpayer accumulated earnings in 1965, 1966 and 1967 to finance the costs of the projects.

The Commissioner of Internal Revenue, however, determined that taxpayer had permitted its earnings and profits to accumulate unreasonably, and issued a statutory notice of deficiency and asserted an accumulated earnings tax for those years.

Contesting the determination to the tax court, taxpayer contended that the remodeling and expansion, Sunday edition and offset press all were part of a plan conceived in 1963 and carried out during the taxable years in issue. Be-

---

1. 26 U.S.C. § 531 provides:

In addition to other taxes imposed by this chapter, there is hereby imposed for each taxable year on the accumulated taxable income (as defined in section 535) of every corporation described in section 532, an accumulated earnings tax equal to the sum of—
  (1) 27½% of the accumulated taxable income not in excess of $100,000, plus
  (2) 38½% of the accumulated taxable income in excess of $100,000.

2. 26 U.S.C. § 533(a) provides:
  (a) Unreasonable accumulation determinative of purpose.—For purposes of section 532, the fact that the earnings and profits of a corporation are permitted to accumulate be-

yond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax with respect to shareholders, unless the corporation by the preponderance of the evidence shall prove to the contrary.

3. 26 U.S.C. § 532(a) provides:
  (a) General Rule.—The accumulated earnings tax imposed by section 531 shall apply to every corporation (other than those described in subsection (b)) formed or availed of for the purpose of avoiding the income tax with respect to its shareholders or the shareholders of any other corporation, by permitting earnings and profits to accumulate instead of being divided or distributed.

cause its earnings were accumulated for reasonable and reasonably anticipated business needs instead of for the purpose of avoiding income tax upon the stockholders,[4] taxpayer argued, imposition of the accumulated earnings tax was improper.

The government took the position that taxpayer had not demonstrated a definite plan for the years in issue that would justify the accumulation of earnings for (1) six months working capital, (2) the offset press, (3) the Sunday edition, or (4) for remodeling and expansion other than changes actually made during the years in issue. By deleting these costs from taxpayer's expenses, and by adding the value of the marketable securities held for investment purposes to taxpayer's liquid assets, the government contended taxpayer's earnings and profits from prior years were more than sufficient to cover taxpayer's reasonable needs. Accordingly, the government contended the accumulated earnings tax imposed should be upheld.

Finding over a 5:1 ratio of assets to liabilities, the tax court affirmed the Commissioner's determination that taxpayer's accumulation of earnings and profits was beyond its reasonably anticipated business needs. Specifically, the tax court (1) allowed taxpayer operating working capital for a three month period ($313,433.00) rather than a six month period, and (2) rejected taxpayer's contention that the offset press, plant remodeling and expansion (other than the $450,000.00 actually spent during the taxable years in issue) and development of a Sunday edition were reasonable business needs during 1965–1967.

The determination made by the tax court is a finding of fact which must be sustained if supported by the record. Henry Van Hummell, Inc. v. Commissioner of Internal Revenue, 364 F.2d 746 (10th Cir. 1966), cert. denied,

386 U.S. 956, 87 S.Ct. 1019, 18 L.Ed.2d 102 (1967); Oklahoma Press Pub. Co. v. United States, 437 F.2d 1275 (10th Cir. 1971). Accordingly, we must view the evidence in a light most favorable to the party prevailing below, the government.

## OPERATING CAPITAL BUSINESS NEEDS

During the trial to the tax court, taxpayer claimed a need for six months operating working capital of $616,866.00. Based upon the evidence presented, however, the tax court rejected this claim and allowed taxpayer $313,433.00 for working capital over a three month period.

Taxpayer cites other court decisions which hold operating expenses based upon even greater lengths of time to be reasonable. However, the individuality of each business must be considered in light of its particular needs in order to ascertain what is reasonable for it. Henry Van Hummell, Inc. v. Commissioner of Internal Revenue, *supra*; 7 Merten, L.Fed. Income Tax. § 39.39 (Zimet & Barton rev. 1967).

Taxpayer made no attempt to substantiate its claim by an analysis of its actual operating cycle needs, but by the testimony of an independent newspaper executive. A determination of what is a reasonable amount of working capital must be based on factual evidence as to experience and not on opinion testimony. Even so, her testimony left much to be desired. She acknowledged she had taken only "a very casual glance" at taxpayer's operations for the years in issue, yet she proceeded to state a six month operating capital reserve was necessary because of the possibility taxpayer might suffer a mechanical failure, natural disaster or a labor problem.

Taxpayer's comptroller also indicated a six month operating reserve was necessary for strikes, major breakdowns,

---

4. Taxpayer concedes that had all of its earnings and profits for the years 1965–1967 been distributed to its shareholders, the effect would have been to increase the individual income taxes of the four largest shareholders by $103,972.05.

paper shortages and the possibility taxpayer might lose its second class mailing permit if it was forced to stop printing for any reason.

We find no evidence in the record that these contingencies were either realistic or reasonable. The last time taxpayer suffered a natural disaster, which then only curtailed but did not stop operations, was in 1949. Nor has taxpayer suffered a mechanical breakdown which would prevent publication in the last thirty-three years. Furthermore, taxpayer has not had a labor strike in twenty years. During the years in issue, in fact, taxpayer was operating under a labor contract which was characterized by the board of directors as the best labor settlement in the company's history. Finally, taxpayer's asserted fear of losing its second class mailing permit in the event it was forced to cease publication is unfounded. Its secretary-treasurer testified that such an unlikely determination by the Post Office could be successfully appealed, and that taxpayer has never had to make such an application.

At best, taxpayer has established that a six month operating working capital might have been necessary in the event of a hypothetical disaster. In the absence of any evidence supporting the reasonableness of the hypothesis, however, we cannot allow taxpayer to retain earnings merely for the purpose of providing for some theoretical contingency that might never have transpired. Mere possibilities do not amount to reasonable or reasonably anticipated business needs. Hardin v. United States, 461 F.2d 865 (5th Cir. 1972); Oklahoma Press Pub. Co. v. United States, *supra*.

The record does show that taxpayer's income is derived primarily from advertising and subscriptions. Apparently its only inventory consists of paper on which the newspapers are printed and comparable supply items. The cost of a year's supply of such items is 15% of taxpayer's yearly operating costs. The record also shows most of taxpayer's advertising accounts were billed at the end of each month, most being paid within thirty days.

These facts do not establish a need to retain a six month working capital reserve. To the contrary, they show taxpayer needs operating capital for a relatively short period of time. Accordingly, we must affirm the tax court's decision in this regard.

### SUNDAY EDITION

Taxpayer next contends the tax court erred in denying it an accumulated earnings credit of $143,000 for each of the years in issue, for the cost of establishing a Sunday edition. Although no minutes were kept thereof, taxpayer contends its executive committee held numerous meetings during the years in issue at which extensive discussions were had and decisions and plans made for a long-range expansion and modernization project, which included the anticipated publication of a Sunday edition. Therefore, taxpayer contends, commencement of a Sunday edition was probable during the years in issue and the retention of earnings for such a purpose was a reasonably anticipated business need. We cannot agree.

To justify an accumulation of earnings and profits for reasonably anticipated business needs, a taxpayer must have specific, definite and feasible plans for the use of such accumulation.[5] The purpose, in other words, must be expressed in some tangible way or by some

---

5.  Treas.Reg. § 1.537–1(b)(1) provides:
    In order for a corporation to justify an accumulation of earnings and profits for reasonably anticipated future needs, there must be an indication that the future needs of the business require such accumulation, and the corporation must have specific, definite, and feasible plans for the use of such accumulation. Such an accumulation need not be used immediately, nor must the plans for its

use be consummated within a short period after the close of the taxable year, provided that such accumulation will be used within a reasonable time depending upon all the facts and circumstances relating to the future needs of the business. Where the future needs of the business are uncertain or vague, where the plans for the future use of an accumulation are not specific, definite, and feasible, or where the execution of

clear action directed towards its fulfillment. Henry Van Hummell, Inc. v. Commissioner of Internal Revenue, *supra*.

■ Although a Sunday edition was commenced in 1968, the record gives us no evidence of a specific plan to do so during the taxable years in issue. The first indication taxpayer was considering a Sunday edition is found in the October 11, 1963, minutes of a board of directors meeting.[6] Except for a memorandum, dated August 14, 1964, there is no evidence that taxpayer again considered a Sunday edition until a board of directors meeting late in 1967 where it was decided a greater in-depth study of the subject was needed.

Even though taxpayer may have been considering a Sunday edition for several years, it either did not make, or postponed the making of, any definite plans therefor during the taxable years in issue. An accumulation of earnings cannot be justified on the grounds of reasonably anticipated business needs where such needs are vague or uncertain. We affirm the tax court's determination of this issue.

## OFFSET PRESS

■ Taxpayer also claims the tax court erred in denying it accumulated earnings credits for reasonably anticipated business needs incident to the purchase and installation of an offset press.[7]

■ The need for an offset press is not disputed, the only question being whether taxpayer formulated specific

plans for obtaining one during the taxable years in issue. We have examined the record and once again find we must sustain the tax court's determination. Indeed, there is a total absence of evidence in taxpayer's favor.

At trial, an exhibit labeled "Anticipated Extraordinary Needs" for the years 1965–1967 was introduced into evidence. The document detailed estimated costs of an offset press and attendant equipment. At first glance this would seem to indicate a plan on taxpayer's part for an offset press. The record discloses, however, that this document was not prepared for or during the taxable years in issue, but within several months preceding the trial.

Similarly, blueprints of the press (prepared 1–23–73), which were admitted into evidence lend support to the conclusion an offset press was not under consideration during the years in issue. Furthermore, taxpayer's treasurer testified the need for an offset press was not even realized until after the completion of remodeling (only substantially completed as of October, 1966). Thus, the facts support the tax court's finding that there was no corporate action directed toward the acquisition of an offset press during the taxable years in issue.

## MARKETABLE SECURITIES

It was error, taxpayer argues, to add the value of marketable securities held by it for investment purposes to its liquid assets in determining whether there has been an unreasonable accumulation of earnings and profits.

---

such a plan is postponed indefinitely, an accumulation cannot be justified on the grounds of reasonably anticipated needs of the business.

6. The pertinent part of the minutes state "the executive committee would go into the matter of establishing a Sunday newspaper very thoroughly during the first quarter of 1964."

7. Subsequent to trial taxpayer moved to reopen the case, and offered new corroborative evidence on this issue. It offered a letter of

intent to purchase the press (dated 12–3–71), an executed sales agreement (dated 1–12–72) and a newspaper article (dated 6–11–72) showing press construction progress. The tax court properly denied the motion. The determination of a reasonable business need must be based on facts and circumstances existing in the year in issue, and not by events transpiring in subsequent years that shed no new light upon the facts as they existed in the year in issue. *See* Sterling Distributors, Inc. v. United States, 313 F.2d 803 (5th Cir. 1963).

■ Investments in marketable securities which bear some relationship to a corporation's business usually are considered a proper business application of funds and may be accumulated with impunity. Marketable securities held for investment purposes, however, are not afforded the same status. Such a policy would allow a corporation to avoid an accumulated earnings tax merely by investing all excess cash in marketable securities, a result contrary to the accumulated earnings tax provisions. Instead, such securities must be considered part of a corporation's liquid assets in arriving at the figure a corporation must justify retaining. *See* Young Motor Co., Inc. v. Commissioner of Internal Revenue, 339 F.2d 481 (1st Cir. 1964); Electric Regulator Corp. v. Commissioner of Internal Revenue, 336 F.2d 339 (2d Cir. 1964); Ziegler, The "New" Accumulated Earnings Tax: A Survey of Recent Developments, 22 Tax L.Rev. 77, 90 (1966).

Indeed, the treasury regulations [Treas.Reg. § 1.533–1(a)(2)(ii) and § 1.537–2(c)(4)] apparently regard the presence of marketable securities among a corporation's assets as affirmative evidence of the avoidance purpose.

■ Taxpayer's marketable securities held for investment purposes, then, must be considered a part of its liquid assets.

## TAXES

■ Taxpayer paid federal income taxes for 1965, 1966 and 1967 in the amounts of $106,562.00, $102,383.00 and $38,196.00, respectively. It claims the tax court erred in its consideration of these taxes as they operate to reduce accumulated earnings.

The government does not contend, and the tax court did not hold, that appropriate federal income tax payments may not be used to reduce an asserted accumulated earnings surplus. Taxpayer's surplus was, in fact, reduced by the above amounts which apparently were considered to be part of "current ex-penses". Taxpayer, however, asserts that such sums should be considered "reasonably anticipated business expenses" as well as "current expenses". The result would be a double income tax reduction from accumulated earnings, for each year in issue.

Taxpayer is attempting to gain an advantage it is not entitled to receive. A corporation may not take a double reduction for federal income taxes in justifying accumulated earnings.

The decision of the Tax Court is affirmed.