STEELMASTERS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Steelmasters, Inc. v. Commissioner
Docket No. 836-74.
United States Tax Court
T.C. Memo 1976-324; 1976 Tax Ct. Memo LEXIS 79; 35 T.C.M. (CCH) 1460; T.C.M. (RIA) 760324; October 21, 1976, Filed; As amended October 26, 1976. Patrick J. Murphy, for the petitioner. E. Noel Harwerth, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined the following deficiencies in petitioner's Federal income tax: FYE
Deficiency
2/28/69
$15,901
2/28/70
15,982
We are to decide whether during the years in issue petitioner was availed of for the purpose of avoiding income tax with respect to its shareholders by permitting its earnings and profits to accumulate rather than being distributed to such shareholders. FINDINGS OF FACT Incorporated in these findings are the stipulation of facts and the appended exhibits. Steelmasters, Inc. *81 (hereinafter referred to as Steelmasters or petitioner) is an Illinois corporation with its principal place of business in New York City. Petitioner timely filed Federal corporate income tax returns for the years in issue with the District Director of Internal Revenue for Manhattan, New York. Steelmasters is a family corporation with its outstanding shares owned entirely by Joseph Block and his wife, Dorothy Block. Both are salaried employees of the corporation, serving in the capacity of president and vice-president/treasurer, respectively. During the years 1969 and 1970, Joseph and Dorothy Block filed joint Federal income tax returns reporting taxable income of $34,470 and $47,236; placing the last portion of their income in the 42 percent and 50 percent income tax brackets for those years respectively. If Steelmasters had distributed its current accumulated earnings to its stockholders as dividends in proportion to stock held, Joseph and Dorothy Block would have realized additional joint income in the amounts of $40,333 and $53,225 in the years ended 1969 and 1970, respectively. Steelmasters has never declared a dividend to its shareholders. Set forth below are pertinent *82 balance sheets for each of the years in issue. [1]
FYE February 28, 1969
ASSETS
Current Assets: Cash
$527,781
Accounts Receivable
14,437
Merchandise Inventories
86,576
Marketable Securities (Cost)
557,801
Due from Brokers
125,765
Miscellaneous Receivable
2,147
Total Current Assets
$1,314,513
Advances to Affiliates
26,685
Investment in Block
China Corp.
100,000
Loans & Advances
99,854
Prepaid Expenses
681
Investment in Ercona Corp.
45,000
Furniture & Fixtures
5,522
Total Assets
$1,592,255
LIABILITIES AND CAPITAL
Accounts Payable
$133,932
Accruals
63,354
Total Current Liabilities
$197,288
Capital Stock Outstanding
2,000
Retained Earnings
1,392,969
Total Liabilities and Capital
$1,592,255
FYE February 28, 1970
ASSETS
Current Assets: Cash
$124,005
Accounts Receivable
381,742
Merchandise Inventories
304,916
Marketable Securities (Cost)
807,615
Due from Brokers
2,721
Miscellaneous Receivable
4,078
Total Current Assets
$1,625,077
Advances to Affiliates
26,685
Investment in Block
100,000
China Corp.
Loans & Advances
119,836
Prepaid Expenses
511
Investment in Ercona Corp.
45,000
Furniture & Fixtures
10,740
Total Assets
$1,927,858
LIABILITIES AND CAPITAL
Accounts Payable
$413,461
Accruals
54,991
Total Current Liabilities
$468,452
Capital Stock Outstanding
2,000
Retained Earnings
1,457,406
Total Liabilities and Capital
$1,927,858
*83 Set forth below are petitioner's statements of income or loss for each of the years in issue. FYE February 28, 1969
Sales
$720,812
Cost and Expenses: Cost of Goods Sold
$615,707
Expenses, Bad Debts,
136,441
etc.
Total Costs
752,148
Income (or Loss) on Operations
(31,336)
Other Income - (Interest,
dividends, capital gains)
180,807
Income (or Loss) before
Income Tax
149,471
Less Federal Income Taxes
40,528
Income after Taxes (or Loss)
$108,943
FYE February 28, 1970
Sales
$3,270,236
Cost and Expenses: Cost of Goods Sold
$2,968,804
Expenses, Bad Debts,
246,809
etc.
Total Costs
3,215,613
Income (or Loss) on Operations
54,623
Other Income - (Interest,
dividends, capital gains)
44,112
Income (or Loss) before
Income Tax
98,735
Less Federal Income Taxes
36,402
Income after Taxes (or Loss)
$62,333
Steelmasters has engaged for over 30 years in the import and wholesale business, purchasing most of its merchandise from sources located in Western Europe. Beginning in 1949, Steelmasters became a major importer, wholesaler, and distributor of Zeiss optical goods. Among its larger purchasers of *84 the Zeiss goods was its subsidiary Ercona Corporation, which on its own imported and distributed such goods. In 1962, a trademark infringement suit was brought against Steelmasters, Ercona Corporation and three other defendants (V.E.B. Carl Zeiss, Jena; Exakta Camera Company, Inc., and Camera Specialty Company, Inc.). This suit was instituted by the Carl Zeiss Stiftung Company, a West German corporation. The legal encounter between Carl Zeiss Stiftung and Carl Zeiss, Jena had its origins in post World War II Germany. The Zeiss plant and related enterprises were established in 1846 in Jena, Germany, and operated there until the end of World War II. Just prior to the Russian move into Jena, which lies in what is now East Germany, six managers and 132 other Zeiss employees were removed by American forces to Heidenheim, now part of West Germany. Only six employees were left behind in Jena. Although East German Zeiss was nationalized in 1948, the East German and West German Zeiss concerns continued to cooperate until 1954. Eventually the West German company obtained a judgment barring East German Zeiss from using the Zeiss trademark in West Germany. In 1962 suit was brought *85 by West German Zeiss in the United States in order to obtain sole use of the Zeiss trademark in the United States.The action sought recovery of all profits attributable to the importation and sale of Zeiss marked goods earned by Steelmasters, Erconca, and the other defendants from 1950 through 1955. [2] Additionally, the plaintiffs sought treble damages for loss of profits. In 1968, after a trial without a jury, the district court entered its order directing Steelmasters, Ercona and the other defendants to account for and pay over to the plaintiff all the profits each of them had earned from the importation or sale of goods bearing the Zeiss marks; and also to pay to the plaintiffs three times the damages which the plaintiffs suffered as a result of such importation and sale. Carl Zeiss Stiftung v. V.E.B. Carl Zeiss,Jena,293 F. Supp. 892 (S.D. N.Y. 1968), 298 F. Supp. 1309 (S.D. N.Y. 1969). In November 1970, *86 the Court of Appeals modified the judgment, affirming the direction granting injunctive relief but eliminating the direction that the defendants account for and pay over their profits and pay damages. Carl Zeiss Stiftung v. V.E.B. Carl Zeiss,Jena,433 F.2d 686 (2d Cir. 1970), cert. denied 403 U.S. 905 (1971). Sales of goods bearing the Zeiss mark between Steelmasters and Ercona began in 1950 and continued until 1963. After 1963, Steelmasters ceased to import Zeiss goods and, thereafter, Ercona imported directly from Zeiss. Steelmasters' aggregate sales of Zeiss goods to Ercona from 1950 through 1955 were approximately $500,000. By the 1960's the volume of such sales had reached $500,000 for a single year. At the time the trademark suit was initiated, the attorneys and accountants for Steelmasters and Ercona advised the defendants that their joint potential exposure for liability to damages was approximately one to one and one-half million dollars. As between Steelmasters and Ercona, the division of liability was approximately 40/60, with Steelmasters bearing the weight of such exposure. On April 6, 1973, pursuant to section 534(b), [3] *87 respondent notified petitioner of his intention to assert an accumulated earnings tax with respect to Steelmasters's fiscal years ending February 28, 1969 and February 28, 1970. Petitioner timely filed a sworn statement pursuant to section 534(c) setting forth the following business reasons for its accumulation of earnings in that fiscal year: 1. The corporation had experienced, and in the years in question continued to experience, an erratic demand for its products; sales in 1970 were almost $3,300,000, a marked increase over 1969 sales of just over $700,000. In anticipation of this increase in activity the corporation made plans to finance additional inventory and sales materials. 2. Purchases from foreign suppliers were made by letters of credit issued by the Sterling National Bank of New York. In order to guarantee the payment of these credits, Sterling required the corporation to retain a liquid asset reserve independent of its business inventories. 3. In the years in question Steelmasters and its subsidiary, Ercona, were defendants in a major trademark case; the exposure to a substantial money judgment was a clear threat during the years in question. *88 On November 8, 1973, respondent mailed a notice of deficiency to petitioner in which he asserted an accumulated earnings surtax against Steelmasters for the fiscal years in question. At trial petitioner orally moved pursuant to Rule 142(e) of the Tax Court Rules of Practice and Procedure in request of a ruling from the Court that its statement under section 534(c) was sufficient to shift the burden of proof to the respondent with respect to the business reasons asserted therein for its accumulations. OPINION We are called on to decide whether Steelmasters, during its fiscal years in issue, was availed of for the purpose of avoiding income tax with respect to its shareholders within the meaning of section 532 [4] by permitting its earnings and profits to accumulate rather than be divided or distributed. *89 The resolution of whether a corporation has been availed of for such a purpose is necessarily a question of fact, to be derived from each case standing individually on its merits. Helvering v. National Grocery Co.,304 U.S. 282 (1938). In order to make such a determination, it is necessary to decide whether earnings and profits were permitted to accumulate beyond the reasonable needs of the business and whether the proscribed tax avoidance purpose existed. Bremerton Sun Publishing Co.,44 T.C. 566 (1965). If the earnings of a corporation have been permitted to accumulate beyond the reasonable needs of the business, that fact shall be determinative of the purpose to avoid income tax with respect to its shareholders unless the corporation proves to the contrary by a preponderance of the evidence. See section 533. [5] In this regard, the term "reasonable needs of the business" includes "the reasonably anticipated needs of the business." Sec. 1.537-1(a), Income Tax Regs.
*90 Respondent has asserted that, at the beginning of each of the years in question, petitioner had permitted earnings and profits to accumulate beyond its normal business needs. [6]
*91 As a preliminary matter, we must first determine the placement of the burden of proof. Petitioner contends that his submitted statement sufficiently meets the requirements of section 534 and the regulations issued thereunder so as to shift the burden of proof to respondent. We decline to so hold. Section 1.534-2(b)(2), Income Tax Regs., provides that the burden of proof shall shift to the Commissioner if the statement submitted contains grounds for such accumulations together with facts sufficient to show the basis thereof. The documents submitted by petitioner include statements concerning its alleged future needs with respect to financing additional inventory and sales materials, maintaining a fund to guarantee certain letters of credit required in its import business, and maintaining a fund in anticipation of potential liability arising from a trademark infringement suit to which petitioner was a named defendant. With respect to each of these grounds, however, petitioner statement did not include facts sufficient to support and show the basis for the grounds relied on. Rather, the statements submitted are largely conclusions which omit necessary details of fact and *92 dollar amounts of the funds which petitioner could reasonably be expected to accumulate. We must therefore conclude that petitioner's letter is not sufficiently clear and definite to support each asserted ground. Hence, we find it inadequate to shift the burden of proof in this instance. Wellman Operating Corp.,33 T.C. 162 (1959); Dixie, Inc.,31 T.C. 415 (1958), affd. 277 F.2d 526 (2d Cir. 1960), cert. denied 364 U.S. 827 (1960). Looking now to the facts, we find that, irrespective of the placement of the burden of proof, petitioner did not accumulate its earnings and profits beyond its present and reasonably anticipated future needs. Under its third category listed in the section 534 statement, petitioner lists a potential exposure to a substantial money judgment resulting from a major trademark infringement case. It is well established that a corporation can accumulate funds to satisfy a contingent liability. William C. Atwater & Co.,10 T.C. 218 (1948); Casey v. Commissioner,267 F.2d 26 (2d Cir. 1959), affg. on this issue a Memorandum Opinion of this Court. Respondent does *93 not contend otherwise; rather he maintains that (1) petitioner has not demonstrated that it reasonably expected to suffer such a contingent liability; (2) that the amount of the contingent liability could not reasonably be anticipated; (3) that petitioner's retention of earnings to provide for such a contingency was therefore not a reasonable business need. Since 1962, some seven years prior to the years in issue, petitioner was party to complex litigation involving alleged trademark infringements. From February 1962 until April 1, 1969, when the district court entered its judgment, Steelmasters and its subsidiary, Ercona, were confronted with the possible entry of judgment directing each of them to account for and pay over to the plaintiff all the profits each of them had earned from the importation or sale of goods bearing the Zeiss marks; and also to pay to the plaintiffs three times the damages which the plaintiffs suffered as a result of such importation and sale. Due to the fact that petitioner was a major importer and distributor of goods bearing the East German Zeiss mark, coupled with the tremendous uncertainty involved in establishing the amount of damages incurred *94 in treble damage suits, most of the individuals involved were at a loss to speculate on a precise potential recovery figure. However, petitioner's attorney estimated that the combined recovery could have approached one and one-half million dollars with petitioner bearing the major portion. From April 1, 1969, when the district court entered its judgment until January 6, 1971, when the court of appeals entered its judgment modifying the district court's judgment, Steelmasters and Ercona were debtors under that judgment, which directed that each of them account for and pay over the profits it had earned from the Zeiss trade and also to pay the damages of the plaintiffs. It was not until June 1971, when the United States Supreme Court denied the plaintiff's writ of certiorari, that Steelmasters and Ercona were relieved from the onus of the district court judgment. In view of the foregoing, we are satisfied that the possibility of the liability arising was a realistically foreseeable contingency and treated as such by petitioner's management. During the first year in issue, petitioner was faced with the possible entry of an adverse judgment in a major trademark infringement *95 suit; by the second year in question, the district court had entered its judgment thereby causing the liability to become fixed. From our standpoint, it was entirely reasonable for petitioner's management to permit earnings to accumulate as a means of insulation against an adverse outcome. Indeed, under such circumstances, management would have been derelict in their duties had they not allowed such funds to accumulate. See Bremerton Sun Publishing Co.,44 T.C. 566 (1965). Nor can we agree with respondent's contention that the uncertainty of the amounts involved prevented petitioner from forming a realistic intention to protect against the contingency. Inherent in any litigation are uncertainties regarding outcome. In this instance, the usual uncertainties were further aggrandized by the precarious nature of the litigation involved: a treble damage suit in which damages would be based on three times the profits lost by the plaintiff. Such a situation, in our view, justifies the full amount of petitioner's accumulation of earnings. John P. Scripps Newspapers,44 T.C. 453 (1965); cf. J. Gordon Turnbull, Inc.,41 T.C. 358 (1963), *96 affd. 373 F.2d 87 (1967), cert. denied 389 U.S. 842 (1967). Hence, we are satisfied that petitioner's management acted for the best interest of petitioner and decided with good reason that the retention of earnings during the years in issue was necessary to provide a cushion against possible trademark infringement liability. Taking into account the amount of petitioner's net current assets during the years before us and petitioner's current working capital needs, [7] the accumulations were clearly not excessive in light of the potential liability. Casey v. Commissioner,267 F.2d 26 (2d Cir. 1959), affg. on this issue a Memorandum Opinion of this Court. We therefore see no reason to discuss the two other grounds which petitioner has listed in justification of its retention of earnings during the years in issue. Accordingly, we hold that petitioner did not accumulate earnings during the years in issue beyond the reasonable needs of the business. Having so held, the credit provided for in section 535(c)(1) renders it unnecessary for us to consider whether the proscribed purpose of avoiding income *97 tax may have existed. See John P. Scripps Newspapers,supra.
Decision will be entered under Rule 155. Footnotes
1. The documents, as stipulated, contain several mathematical errors which do not appear to be critical in view of the relative amounts involved.↩
2. Subsequent to 1955 the United States Attorney General, pursuant to Treaty, had ordered the defendants to obliterate all Zeiss marks from the East German merchandise, thereafter rendering it unnecessary for the plaintiffs to seek further relief.↩
3. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
4. SEC. 532. CORPORATIONS SUBJECT TO ACCUMULATED EARNINGS TAX. (a) General Rule.--The accumulated earnings tax imposed by section 531 shall apply to every corporation (other than those described in subsection (b)) formed or availed of for the purpose of avoiding the income tax with respect to its shareholders or the shareholders of any other corporation, by permitting earnings and profits to accumulate instead of being divided or distributed.↩
5. SEC. 533. EVIDENCE OF PURPOSE TO AVOID INCOME TAX. (a) Unreasonable Accumulation Determinative of Purpose.--For purposes of section 532, the fact that the earnings and profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax with respect to shareholders, unless the corporation by the preponderance of the evidence shall prove to the contrary.↩
6. Pursuant to the so-called Bardahl formula, respondent has calculated that petitioner's working capital needs for one business cycle did not exceed $106,000 in the year ended 1969 and $405,000 in 1970. See Bardahl Manufacturing Corp.,T.C. Memo. 1965-200. However, we have repeatedly stated that the Bardahl formula is only one of the several rules of thumb employed by us in determining the reasonableness of accumulations of earnings. See The Cheyenne Newspapers,Inc.,494 F.2d 429 (10th Cir. 1974), affg. a Memorandum Opinion of this Court. In any event, as indicated by certain letters of credit, we are aware of a significant increase in inventory and an overall acceleration in petitioner's operations toward the latter part of the year ended 1969. Respondent's computations, having failed to take such features into account, are substantially low for that year. Hence, on the basis of all the evidence in the record, we conclude that petitioner had need of working capital in the year ended 1969 of at least $350,000.↩
7. See footnote 6, supra↩.