**Eugene W. deROCHEMONT, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**No. 391–89T.**

United States Claims Court.

May 10, 1991.

---

Eugene W. deRochemont, pro se.

G. Robson Stewart, Washington, D.C., for defendant.

## OPINION AND ORDER

TURNER, Judge.

Plaintiff Eugene deRochemont sues for a refund of $8960.38 and interest thereon assessed against him and collected by the Internal Revenue Service. The $8960.38 sum is comprised of three separate amounts. First, deRochemont requests a refund of $2666 for an alleged overpayment in his own 1979 income tax. Second, deRochemont seeks a refund of $5015.62 which he alleges was illegally assessed and collected; the IRS deemed deRochemont deficient for 1982 in the amount of $5015.62 when it discovered that he had prepared a fraudulent 1979 quarterly payroll tax return in the name of D & L Fleck, Inc., which return induced a $5015.62 refund that deRochemont directed be sent to his own address. Third, deRochemont seeks a refund of $1278.76 which he alleges was illegally assessed and collected; the IRS deemed deRochemont deficient for 1982 in the additional amount of $1278.76 after an IRS investigation had revealed that deRochemont had prepared a false 1979 individual income tax return in the

name of Brenda Wilson, inducing a $1278.76 refund.

Plaintiff has moved for judgment on the pleadings, and defendant has responded with a cross-motion for summary judgment. We conclude that with respect to the claim for a refund of the alleged $2666 overpayment by deRochemont of his own 1979 individual income tax, plaintiff's motion for judgment on the pleadings should be denied and the claim should be dismissed. We further conclude that the IRS lacked authority to assess a deficiency in deRochemont's 1979 income tax to recoup the fraudulently induced $5015.62 D & L Fleck refund, and that a genuine issue of material fact exists regarding whether the IRS properly assessed the $1278.76 amount to recoup the 1979 Wilson refund. However, in light of deRochemont's apparent attempt to practice fraud in the statement of a claim against the United States (namely, the instant refund suit), we have by separate order of even date directed deRochemont to show cause why the remaining two refund requests should not be forfeited to the United States under 28 U.S.C. § 2514 (when there is an attempt to practice fraud in the statement of a claim against the United States, such claim is forfeited).

## I

Except where indicated otherwise, the following statement of facts is based on those allegations of the complaint admitted by the government, defendant's proposed findings of uncontroverted fact and court records from criminal proceedings brought against deRochemont for the filing of fraudulent tax returns. Plaintiff has not responded to defendant's cross-motion for summary judgment, so to the extent that defendant's proposed findings of uncontroverted fact do not contradict the allegations of the complaint, we accept the proposed findings as undisputed. Further, because plaintiff does not challenge the authenticity of the court records, we accept the information contained therein as true.

From 1978 through 1982, deRochemont prepared and filed false tax returns with

the IRS in his own name, in the name of Brenda Wilson (an acquaintance of deRochemont) and in the name of D & L Fleck, Inc. (a company for which deRochemont did accounting work as an independent contractor). Unaware that the returns contained false information, the IRS issued refund checks payable to deRochemont, to Wilson and to D & L Fleck "in care of" Associated Business Systems, a corporation controlled by deRochemont. According to the sworn declaration of IRS special agent John Strunk, plaintiff received and negotiated at least eleven refund checks to which he was not entitled.

In connection with the false tax return scheme, deRochemont was charged with twelve violations of 18 U.S.C. § 287, filing fraudulent claims against the United States. On October 21, 1983, deRochemont pleaded guilty to six counts, and in exchange the government agreed to dismiss the remaining six counts. One of the charged offenses to which deRochemont pleaded guilty was preparing and filing a false 1979 quarterly payroll tax return on behalf of D & L Fleck with the intent to receive money to which he knew he was not entitled. DeRochemont was also charged with preparing and filing a false 1979 individual income tax return in the name of Brenda Wilson with the intent to receive money to which he knew he was not entitled, but he did not plead guilty to this alleged offense.

In order to recover the fraudulently induced 1979 D & L Fleck refund and the 1979 Wilson refund which the IRS believed to have been fraudulently induced, on July 26, 1984 the IRS assessed a deficiency against deRochemont ostensibly (but apparently mistakenly) for tax year 1982.[1] After the IRS collected the assessed amounts and interest thereon, deRochemont filed timely claims for refunds in the amounts of $5015.62 plus interest and $1278.76 plus interest. The two refund claims identified the tax year as 1979. With respect to the $5015.62 assessment, deRochemont asserted that an erroneous

1. *See post* at 86 n. 10.

refund of an employer's quarterly payroll tax cannot be recovered by assessing a deficiency against an individual taxpayer and that he "never received or negotiated any IRS refund checks belonging to D & L Fleck, Inc." With respect to the $1278.76 assessment, deRochemont asserted that he did not sign or file the 1979 Wilson return, that he did not receive or negotiate the 1979 Wilson refund check, that the assessment of the erroneous Wilson refund against him was illegal and that the statute of limitations on assessments to recover erroneous refunds had run prior to the assessment.

Twelve months passed with no response from the IRS on deRochemont's administrative refund claims. This action followed. Plaintiff seeks to recover the sums he paid in connection with the D & L Fleck and Wilson refunds, as well as an alleged overpayment in his individual income tax for 1979 in the amount of $2666. We shall therefore treat the complaint as asserting three separate counts: (i) a request for a refund of an alleged $2666 overpayment of deRochemont's 1979 individual income tax; (ii) a request for a refund of $5015.62 in connection with the IRS's assessment against deRochemont for tax year 1982 to recover the fraudulently induced D & L Fleck refund; and (iii) a request for a refund of $1278.76 in connection with the IRS's assessment against deRochemont for tax year 1982 to recover the Wilson refund. We shall treat each count separately.

## II

■ The request for a refund of $2666 allegedly overpaid cannot proceed because in his administrative claims for refunds, deRochemont never requested a refund for an overpayment of his 1979 personal income tax in the amount of $2666. *See*

I.R.C. § 7422 [2] ("[n]o suit ... shall be maintained ... for the recovery of any internal revenue tax alleged ... to have been in any manner wrongfully collected, until a claim for a refund or credit has been duly filed with the Secretary [of the Treasury]...."); *Burlington Northern, Inc. v. United States*, 684 F.2d 866, 231 Ct.Cl. 222, 225 (1982) (in a tax refund suit, the court may consider only those grounds asserted in the administrative claim for a refund). Because plaintiff has failed to fulfill a condition precedent to bringing suit, count (i) must be dismissed for failure to state a claim upon which relief can be granted.[3]

## III

■ DeRochemont alleges that the assessment of $5015.62 plus interest against him, in connection with the 1979 quarterly payroll tax return of D & L Fleck, was wrongful because he never received or negotiated a tax refund check "belonging to" D & L Fleck. He further alleges that the IRS has no authority to assess a sum against an individual to recoup an erroneous refund of an employer's quarterly payroll tax. Defendant denies both allegations. In ruling on a motion for judgment on the pleadings, we must assume the truth of the assertions in the nonmovant's pleading, assume the falsity of those allegations in the movant's pleadings which are denied by the nonmovant, and ignore any statements in the pleadings which are legal conclusions. *See generally Johns–Manville Corp. v. United States*, 12 Cl.Ct. 1, 14–15 (1987), and authorities cited therein.

For purposes of deRochemont's motion for judgment on the pleadings, then, we must assume that deRochemont received and negotiated a refund check "belonging to" D & L Fleck in the amount of $5015.62

---

**2.** All citations in the form "I.R.C. § ___" are to the Internal Revenue Code, 26 U.S.C. (1988 ed.). With respect to the provisions cited herein, the present version of the Code does not differ from the provisions in effect at the relevant time.

**3.** There is debate whether a claim with respect to which statutory prerequisites have not been satisfied, but which is otherwise within this court's subject-matter jurisdiction, should be

dismissed for lack of subject-matter jurisdiction or for failure to state a claim upon which relief can be granted. We dismiss claim (i) without prejudice for failure to state a claim upon which relief can be granted (by reason of prematurity). Plaintiff has come to the right court with his claim; he is simply premature in asserting it here.

for a refund of D & L Fleck's 1979 quarterly payroll tax.[4] On the other hand, plaintiff's allegation that the IRS had no authority to recoup the D & L Fleck refund in the manner that it did, and the government's denial of that allegation, are legal conclusions. Hence, for purposes of plaintiff's motion for judgment on the pleadings, we disregard the parties averments on the authority question and resolve this pure legal issue for ourselves.

Knowing as we do that deRochemont prepared and filed a false 1979 quarterly payroll tax return on behalf D & L Fleck with the intent to receive money to which he was not entitled,[5] and assuming as we must that deRochemont received and negotiated the refund check generated by that return, we nevertheless conclude that the IRS had no authority to *assess* the $5015.62 sum against deRochemont.

According to defendant, the IRS's authority to assess deRochemont in the amount of the D & L Fleck refund stems from I.R.C. § 6201(a), which provides in relevant part:

> The Secretary [of the Treasury] is authorized and required to make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title, or accruing under any former internal revenue law....

■ On its face, section 6201(a) does not apply to the assessment at issue because the $5015.62 sum was not an assessment of tax. The D & L Fleck refund was for an alleged overpayment of D & L Fleck's employer's quarterly payroll tax under I.R.C.

§ 3402, whereas the IRS assessed deRochemont $5015.62 for a deficiency in his own individual income tax. Clearly receipt of a fraudulently induced refund in the name of a third party gives rise to a debt on the part of the recipient, but the assessment to recover the amount owed does not amount to an assessment of *tax*. Whether deRochemont received or negotiated the 1979 D & L Fleck refund check is thus irrelevant to the propriety of the assessment under section 6201(a). Defendant cites no basis other than section 6201(a) under which the IRS could assess the $5015.62 sum against deRochemont, and we are aware of none.

We are mindful that the original D & L Fleck refund was the product of deRochemont's scheme to defraud the United States. However, " '[j]ust as men must turn square corners when they deal with the government,' *Rock Island, Arkansas & La. R.R. v. United States*, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920), so must government officials 'walk around the same block' when acting on the government's behalf." *Roberts v. United States*, 13 Cl.Ct. 774, 777 (1987), *rev'd on other gds.*, 856 F.2d 201 (Fed.Cir.1988) (unpub.). We have no doubt that the IRS has (or at least at one time had) the means to recover the $5015.62 at issue.[6] We merely conclude that the method which the government chose to recoup the D & L Fleck refund—assessment of a deficiency in individual income tax—was not appropriate. Under the undisputed material facts, we conclude that the IRS lacked authority to assess a $5015.62 deficiency against deRochemont in order to recoup the 1979 D & L Fleck refund.

---

4. In fact, we know this to be true, because deRochemont admitted at his change of pleas hearing that he received the 1979 D & L Fleck refund.

5. He pleaded guilty to this offense.

6. For example, I.R.C. § 7405(b) authorizes the government to bring a civil action to recover "[a]ny portion of a tax imposed by this title which has been erroneously refunded...." However, as defendant acknowledges in its brief, such an action would be time-barred under I.R.C. § 6532(b) (actions to recover erroneous refunds induced by fraud must be brought

within five years from the making of the refund).

We note that contrary to defendant's assertion, collection procedures under I.R.C. § 6501(c)(1) would not be available to recover the D & L Fleck refund. Section 6501(c)(1) applies to assessments or suits to collect tax "[i]n the case of a false or fraudulent return [filed] with the intent to evade tax." Whatever else can be said about deRochemont's scheme to generate a refund in the name of D & L Fleck, it was not undertaken for the purposes of evading tax.

## IV

Plaintiff alleges that he did not sign or file a 1979 return in Wilson's name and that he never received or negotiated the 1979 Wilson refund check; defendant denies these allegations. Further, IRS agent Strunk avers that deRochemont prepared a false return and W–2 form in Wilson's name for 1979, overstating the tax withheld from Wilson's wages by her purported employer, Associated Business Systems. According to Strunk, Wilson never worked for Associated Business Systems, and Associated Business Systems did not withhold any income tax on behalf of Wilson in 1979.

We first address plaintiff's motion for judgment on the pleadings. Again, for purposes of ruling on the motion, we must assume the falsity of those allegations denied by the nonmovant. We therefore assume that deRochemont signed and filed the 1979 Wilson return and that he received and negotiated the resulting refund check. Under these assumptions, the IRS's assessment of a deficiency against deRochemont to recover the sum refunded was proper under I.R.C. § 6201(a)(3), which provides:

> If on any return or claim for refund of income taxes under subtitle A there is an overstatement of the credit for income tax withheld at the source, ... the amount so overstated ... which is allowed as a ... refund may be assessed ... in the same manner as in the case of a mathematical or clerical error appearing upon the return....

The 1979 Wilson return was an income tax return under subtitle A [7] containing what the IRS believed to be an overstatement of the credit for income tax withheld at the source, *i.e.*, nothing had been withheld from Wilson's wages by the employer indicated on the W–2, yet the return stated that $1278.76 had been overwithheld. Fur-

ther, the amount overstated was allowed as a refund. Finally, the amount was assessed against deRochemont in the same manner as a mathematical or clerical error appearing on the return.[8] Because we must assume that deRochemont filed the return and that he received the refund, the assessment was properly made against him rather than against Wilson. Put another way, the refund resulting from an overstatement of income tax withheld at the source was allowed to deRochemont, not to Wilson.

Plaintiff argues that in any event the $1278.76 assessment was untimely under I.R.C. § 6501(a), which provides that "the amount of any tax imposed by [title 26, U.S.C.] shall be assessed within three years after the return was filed...." However, section 6501(a) applies to assessment of tax, and the July 26, 1984 assessment of $1278.76 was not an assessment of tax. Rather, it was an assessment of an "amount" for "an overstatement of the credit for income tax withheld at the source." I.R.C. § 6201(a)(3).

The Internal Revenue Code does not explicitly provide for a limitations period for assessment under I.R.C. § 6201(a)(3) of an amount against an individual to recover an erroneous refund. The most closely analogous provision is I.R.C. § 6532(b), which allows the IRS to bring suit to recover an erroneous refund within five years of the making of the refund "if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact." We hold 'that this five-year limitation period should also apply to an assessment under I.R.C. § 6201(a)(3) to recover an erroneous refund induced by a fraudulent return. *Cf. Board of Regents v. Tomanio,* 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980) (where

---

**7.** Subtitle A, I.R.C. §§ 1–1564, governs income tax; the 1979 Wilson return pertained to Wilson's individual income tax. By contrast, the 1979 D & L Fleck return related to employment taxes under subtitle C, I.R.C. §§ 3101–3507. Because by its terms section 6201(a)(3) applies only to returns or claims under subtitle A, section 6201(a)(3) would not provide a basis for the IRS to recoup the D & L Fleck refund.

**8.** This question was resolved in *deRochemont v. Commissioner,* 86–2 U.S.T.C. ¶ 9726 (M.D.Pa. 1986), and accordingly we are precluded by principles of collateral estoppel from reexamining that issue in this proceeding.

federal cause of action did not contain a limitations period, court would look to the statute of limitations governing the most closely analogous state cause of action). The earliest possible time that the IRS could have made the 1979 Wilson refund was January 1, 1980,[9] and the assessment was made on July 26, 1984, within the five-year period.[10]

We conclude that, assuming that deRochemont signed and filed the 1979 Wilson return and that he received and negotiated the resulting refund check, the IRS had authority to assess a sum against deRochemont in the amount of the 1979 Wilson refund, and that such assessment was timely. Accordingly, deRochemont's motion for judgment on the pleadings must be denied with respect to the request for a $1278.76 refund.[11]

■ We now turn to defendant's cross-motion for summary judgment. Again, deRochemont states that he never signed or filed the 1979 Wilson return, and that he never obtained or negotiated the 1979 Wilson refund check. Defendant avers, via the Strunk declaration, that deRochemont prepared false returns in Wilson's name from 1978 through 1981, and that he benefited from the refunds generated by the false returns.

This factual dispute is material, thus precluding summary judgment. *See*

9. It is not apparent from the record when the refund was made, so we make the most liberal assumption possible in favor of plaintiff.

10. We note that the assessment, although ostensibly made against deRochemont for 1982, was constructively made for 1979. DeRochemont made an "overstatement of the credit for income tax withheld at the source" for 1979, not 1982. However, this does not affect our analysis under the five-year statute of limitations for assessment to recover erroneous refunds under section 6201(a)(3), because the five-year period did not begin to run, at the earliest, until January 1, 1980.

11. Plaintiff also argues that he should have been afforded an opportunity to challenge the $1278.76 assessment before the IRS collected it. This question was resolved against plaintiff in *deRochemont v. Commissioner,* 86-2 U.S.T.C. ¶ 9726 (M.D.Pa.1986), and he is collaterally estopped from relitigating that issue in this proceeding.

*Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (for purposes of summary judgment, a dispute is material if its resolution will affect the outcome of the case). If deRochemont had no involvement with generating the 1979 Wilson refund and if he did not receive the refund check, then it was improper for the IRS to assess an amount equal to the Wilson refund against him. On the other hand, if deRochemont induced and received the erroneous $1278.76 refund, then the IRS was entitled to assess $1278.76 against him under I.R.C. § 6201(a)(3). Defendant's cross-motion for summary judgment must therefore be denied. RUSCC 56.[12]

V

Based on the foregoing, plaintiff's motion filed December 20, 1990 for judgment on the pleadings is DENIED with respect to his request for a refund of an alleged $2666 overpayment in individual income tax for 1979 and with respect to his request for a refund of $1278.76 assessed in connection with the 1979 Wilson refund. Ruling on plaintiff's motion for judgment on the pleadings with respect to his request for a refund of $5015.62 assessed in connection with the D & L Fleck quarterly payroll tax refund shall be withheld pending resolution

12. RUSCC 56 also requires that a dispute of material fact be genuine in order to preclude summary judgment. The dispute of material fact which we have identified is a genuine dispute, notwithstanding defendant's intimations to the contrary. Plaintiff was charged with submitting a false tax return in connection with the 1979 Wilson refund, but this charge was dropped as part of deRochemont's plea bargain. Thus, deRochemont has not admitted to any offense relative to the 1979 Wilson refund. Defendant points out repeatedly that deRochemont admitted to preparing and filing a false return in Wilson's name for tax year 1978. While this may have a bearing on deRochemont's credibility should he testify at trial, his guilty plea to the 1978 tax year offense cannot serve as a basis for rejecting as untrue, at the pleading stage, deRochemont's allegation that he was not involved in the same offense the following year.

of the issue raised by the Show Cause Order entered this date.

Defendant's motion filed February 26, 1991 for summary judgment is GRANTED to the extent of plaintiff's request for a refund of an alleged $2666 overpayment in individual income tax for 1979 and DENIED with respect to the remainder of plaintiff's claims.

Further proceedings on the remaining two refund requests will be stayed pending resolution of the issue raised by the Show Cause Order entered this day.

Entry of judgment dismissing plaintiff's claim for a refund of $2666 allegedly overpaid for 1979 shall be withheld pending disposition of the remaining two claims.