**BURLINGTON NORTHERN INC.**

v.

**The UNITED STATES.**

**No. 152–75.**

United States Court of Claims.

July 14, 1982.

Andrew F. Reardon, St. Paul, Minn., attorney of record, for plaintiff. James W. Littlefield, Steven Z. Kaplan, Briggs & Morgan, St. Paul, Minn., of counsel.

George L. Squires, Washington, D. C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D. C., for defendant.

Before KASHIWA, BENNETT and SMITH, Judges.

## ON PLAINTIFF'S REQUEST FOR INTERLOCUTORY REVIEW

BENNETT, Judge:

This matter is before the court, pursuant to plaintiff's request under Rule 53(c)(2)(ii), for interlocutory review of an order of the trial judge filed February 19, 1982, granting defendant's motion to limit plaintiff's proof at trial.

The underlying action, filed May 6, 1975, asserts an overpayment of federal income taxes by the Great Northern Railway Company for the years 1959, 1960, 1961 and

1962.[1] Claims for refund for years 1959 and 1960 were timely filed on June 26, 1969, and for years 1961 and 1962 on June 29, 1970. One of the grounds set forth in the claims for refund was that Great Northern is entitled, under section 167,[2] to a reasonable allowance for the depreciation of its railroad grading and tunnel bores. This aspect of the claims was disallowed on May 8, 1973, for the reason that plaintiff was determined to have failed to establish that the property in question had an estimated useful life. After stipulation by the parties, this ground for recovery now constitutes the sole affirmative issue pending in this action.

Subsequent to the issuance of the court's standard pretrial order on liability (Rule 111) on December 18, 1978, plaintiff served defendant with its pretrial submission, enclosing therewith schedules of its investments in and retirements of railroad grading and tunnels, and specifying therein that expert testimony would be offered at trial regarding the useful lives of such assets as determined by the actuarial method of life analysis.

On December 22, 1981, defendant filed its motion for an order restricting plaintiff's proof at trial to what it contended were the "factual grounds" asserted by plaintiff in its claims for refund. Specifically, defendant requested that the court limit plaintiff's proof of a useful life for Great Northern's grading and tunnel bores to the sole ground as stated in the refund claims: "Changes in railway technology can be assumed to lead to a remaining life of 50 years from 1959." According to defendant, by plaintiff's pretrial submission it evinced a clear intention to prove useful life on a ground substantially at variance with the one previously asserted, that is, by the use of statistical or actuarial proof based on a tabulation of aged retirements.

On February 19, 1982, the trial judge granted defendant's motion, finding that plaintiff's intended proof was at variance with the ground for recovery set forth in its claims for refund and limiting proof at trial to evidence of foreseeable future changes in railroad technology. The instant request for review followed.

■ As an initial matter, we must decide whether we should exercise interlocutory review pursuant to Rule 53(c)(2). As a general practice, we do not favor interlocutory review of trial court determinations because such review results in piecemeal treatment of litigation. *DeLong Corp. v. United States*, Ct.Cl. No. 563–78 (order entered April 21, 1981); *Allied Materials & Equip. Co. v. United States*, 223 Ct.Cl. 657 (1980). However, intermediate review is appropriate "upon a showing of extraordinary circumstances whereby further proceedings pursuant to the said order would irreparably injure the complaining party or occasion a manifest waste of the resources of the court or of the parties." Rule 53(c)(2)(ii).

Plaintiff's request presents just such "extraordinary circumstances" warranting our attention. The order in question sharply limits the evidence that plaintiff can permissibly introduce at trial, thereby affecting the manner in which both parties will prepare and present their cases. Should a ruling on the correctness of that order be denied, it could needlessly prolong and complicate the trial, certainly increasing the expenditure of time and money by all concerned.

■ Moreover, the issue raised by the trial judge's ruling is properly severable from the main action inasmuch as it concerns only an evidentiary matter, apart from the merits of the case. Given the

---

1. Plaintiff is a Delaware corporation formed on March 2, 1970, as a result of a merger of the Northern Pacific Railway Company, the Great Northern Railway Company, the Chicago, Burlington & Quincy Railroad Company and the Pacific Coast Railroad Company. Plaintiff has, by operation of law, succeeded to the entire interest of the Great Northern Railway Company.

2. 26 U.S.C. § 167 (1976). All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise indicated.

stridency of the parties on the admissibility of the actuarial method, we are virtually guaranteed that the issue will have to be decided by this court at some time, regardless of the outcome of the litigation. In similar circumstances, review has been found to be proper. *See National Presto Indus., Inc. v. United States*, Ct.Cl. No. 301-76 (order entered January 25, 1980). Therefore, we find that it is entirely appropriate to review the substance of the trial judge's order at this time.

It is well established that a refund action cannot be brought in this court unless a claimant has first met certain statutory prerequisites. The specific requirements imposed are set forth in section 7422(a), which provides that:

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected * * * until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof.

■ A proper claim for refund must set forth in detail each ground upon which the refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. Treas.Reg. § 301.6402–2(b)(1) (1967). Any ground for refund not expressly or impliedly contained in the application for refund cannot be considered by a court in which a suit for refund is subsequently initiated. *See Union Pac. R.R. v. United States*, 182 Ct.Cl. 103, 108, 389 F.2d 434, 442 (1968), and cases cited therein. The reason for this is both to prevent surprise and to give adequate notice to the Commissioner of the nature of the claim, and its underlying facts, so that a thorough administrative investigation and determination can be made. *United States v. Memphis Cotton Oil Co.*, 288 U.S. 62, 71, 53 S.Ct. 278, 281, 77 L.Ed. 619 (1933); *Union Pac. R.R. v. United States*, 182 Ct.Cl. at 108, 389 F.2d at 442.

■ The trial judge, upon examination of plaintiff's refund claims, decided that they did not give the Commissioner notice of past retirements as a basis for projecting the remaining useful life of its existing grading and tunnel bores. The relevant portions of the refund claims read as follows:

Great Northern Railway Company had a tax basis as of 1960 of approximately $319,015,907.00 in grading, tunnel bores and its track accounts—Account Numbers 3, 5 and 8–12. Except for certain portions of the grading and tunnel bore accounts subject to ratable depreciation, there has not been a recovery of such amounts by tax deductions. While costs associated with the track lives are normally not considered depreciable presumably due to the inability to establish a useful life, they can be properly depreciated.

Costs generally become depreciable on the ground of anticipated obsolescence insofar as external causes and events could lead to the diminution of value. For the above-identified railway facility accounts, where obsolescence is foreseeable, the question is only one of ratable recovery over the expected period of remaining usefulness. Initially, no obsolescence was anticipated in most cases and therefore provision for ratable recovery must be made at the time it becomes apparent that obsolescence becomes a factor. Rev.Rul. 65–264, 1965–2 C.B. 53 at P. 54, see also *Virginia Electric and Power Co. v. U. S.*, 687 CCH Para. 7930. Under Bulletin "F" ratable estimated deductions are also provided for under "Retirement Accounting." Changes in railway technology can be assumed to lead to a remaining life of 50 years from 1959. Accordingly, taxpayer claims amortization of these assets commencing January 1, 1959.

From this, the trial judge found only one reason to be given in support of the claimed deduction: " * * * presently foreseeable obsolescence resulting from anticipated changes in railroad technology. The language employed contains not the slightest allusion to past retirement experience as a

basis, independent or alternative, for such allowance."

Thus framed, the question for decision is whether the use of past retirement data by means of the actuarial method represents a new ground for recovery, the introduction of which would be precluded because of its omission from the refund claims, or whether such data is simply evidence probative of the factual basis clearly asserted in the claims and, therefore, is properly admissible at trial.

We find the latter choice to be the correct one. We cannot agree with the trial judge that plaintiff's intended proof is at variance with the contents of its refund claims, for we do not believe that the introduction of past retirement data constitutes a new or different ground for recovery. This conclusion follows from an understanding of the fundamental use of the actuarial method of life analysis. Admittedly, the specific application of the methodology is detailed and we do not undertake to explain its intricacies and nuances here.[3] For present purposes, it is sufficient to say that the actuarial method involves the compilation and calculation of what has occurred in the past in order to provide a base or foundation for projecting what is likely to occur in the future. So explained, we do not find the use of past retirement experience as extrapolated by the actuarial method to be a unique or unexpected consequence of plaintiff's efforts to establish a useful life for its assets. Any reasonable estimation of useful life for depreciation purposes is logically predicated, to some extent, on known retirement experience. In fact, the pertinent depreciation regulations advise that such past retirement experience is to be used, whenever available, to determine the proper useful life:

For the purposes of section 167 the estimated useful life of an asset is not necessarily the useful life inherent in the asset but is the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of his income. *This period shall be determined by reference to his experience with similar property* taking into account present conditions and probable future developments. [Treas.Reg. § 1.167(a)–1(b) (1960).] (Emphasis added.)

For this reason, we find plaintiff's efforts to present its past retirement experience to be consistent with the ground for recovery stated in its refund claims. The fact that certain assets have had finite lives due to obsolescence in the past is obviously probative of what lives may be expected in the future for similar assets. As interpreted through the actuarial method, this evidence merely forms the starting point from which plaintiff's factual assertion of anticipated obsolescence must be proved.

The precision to which defendant urges that we now hold plaintiff goes wholly beyond that which is required by the Code or regulations. If a claim fairly apprises the Commissioner of the ground on which recovery is sought, then the claim is adequate for the purposes of bringing suit under section 7422(a). *Berner v. United States*, 151 Ct.Cl. 128, 140, 282 F.2d 720, 727 (1960); *National Forge & Ordnance Co. v. United States*, 139 Ct.Cl. 222, 223, 151 F.Supp. 937, 941 (1957). Plaintiff's refund claims plainly state that plaintiff is entitled to a refund of taxes on the ground that its grading and tunnel bores are depreciable as the result of anticipated obsolescence.[4] That the Commissioner understood and considered those claims on the merits is clear from his letter of denial:

---

3.  A thorough explanation of the actuarial method of life analysis can be found in *Burlington Northern Inc. v. United States*, 230 Ct.Cl. ——, ——, 676 F.2d 566, 568–70 (1982), and in *Chesapeake & O. Ry. v. Commissioner*, 64 T.C. 352, 372–75 (1975).

4.  The factual basis of plaintiff's claims was not anticipated changes in railway technology, as erroneously stated by defendant in its motion to limit, but rather anticipated obsolescence. Whether the changes in railway technology referred to in the claims are changes, if any, which occurred before or after 1959 is neither clear nor necessarily relevant.

Examination has determined that you have failed to establish that the property in question had an estimated useful life and absent this factor you are unable to compute and claim a depreciation deduction in accordance with Section 167 of the Internal Revenue Code.

Any argument that the Commissioner had no notice of the basis of plaintiff's claims or that he was denied the opportunity to fully investigate the substance of the claims is belied by this statement. In sum, we view the introduction of past retirement experience to be nothing more than plaintiff's attempt to refute the Commissioner's determination and to substantiate a useful life for its assets.[5]

Defendant's reliance on our recent decision in *L. E. Myers Co. v. United States*, 230 Ct.Cl. ——, 673 F.2d 1366 (1982), is misplaced. The Treasury regulation, section 301.6402–2(b)(1), cited above, distinguishes between the *ground* of a claim—that is, the legal theory upon which the refund is claimed—and *facts* "sufficient to apprise the Commissioner of the exact basis thereof." In the present case, the issue of law raised by the claims for refund is whether section 167 applies to provide plaintiff a deduction for depreciation based on anticipated obsolescence of the assets involved. The factual basis of the claims is the asserted finite useful life of tunnel borings and gradings. That assertion was sufficient to apprise the Commissioner of the basis of plaintiff's claim.[6] As we have said, the actuarial method and proof of technological changes are but means of establishing the ultimate fact of a finite useful life. In this sense, then, the evidence at issue here constitutes a third, lower level of the claim, not addressed or required by the regulation: the supporting facts with which the claimant intends to prove the ultimate fact of

anticipated obsolescence. We do not pretend that these three levels of a claim—legal ground, ultimate fact, supporting facts—are easily separable in all cases, but the basic outline is clear enough.

Turning to *Myers* itself, that case involved four separate grounds (the opinion often uses the term "issues" to refer to legal grounds) which plaintiff attempted to rely upon in its suit for refund. 230 Ct.Cl. at ——, 673 F.2d at 1367–69. *Myers* held that the ground stated in the claim for refund did not include the grounds which the plaintiff attempted to prove at trial, because, read one way, the stated ground was too general to give notice of the others, and, read the other way, the stated ground was too specific to encompass the others. *Id.* In *Myers*, the fact that the plaintiff, in referring to the grounds that varied from the ground stated in the claim, described them in terms of the ultimate facts associated with them does not change the holding that only one legal *ground* for recovery was stated in that plaintiff's claims for refund. *Myers* addresses a different level of the variance problem than is at issue in the present case. Here, we simply do not reach the question whether plaintiff's proffered evidence was encompassed either generally or specifically by the "ground" stated in the refund claim, because we do not find that such evidence constitutes an additional "ground" of recovery.

Upon the record and the briefs, but without oral argument, plaintiff's request for review was granted by order of the court on June 18, 1982, and the order of the trial judge filed on February 19, 1982, was vacated. The court's order further advised that this opinion explaining the grounds therefor would follow. Plaintiff is permitted to present at trial proof of useful life by

---

**5.** As we understand it, plaintiff purports that an analysis of its historical retirement experience by means of the actuarial method which is then refined by testimony of technological changes will demonstrate a useful life for its railroad grading and tunnel bores. *See, e.g., Virginia Elec. & Power Co. v. United States*, 188 Ct.Cl. 120, 124, 411 F.2d 1314, 1315–16 (1969).

**6.** Many practitioners, although recognizing the requirement that every *ground* must be set forth in detail, advocate that the *facts* stated be limited only to those *sufficient* to "apprise," presumably on the theory that an "insufficiency," if raised, can be timely corrected, whereas a "variance" often cannot.

means of the actuarial method consistent with the opinion of the court in *Burlington Northern Inc. v. United States*, 230 Ct.Cl. ——, 676 F.2d 566 (1982).