GUARANTEE ABSTRACT & TITLE COMPANY, INC., Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

No. 81–1403.

United States Court of Appeals, Tenth Circuit.

Jan. 10, 1983.

Kristina Harrigan, Washington, D.C. (John F. Murray, Acting Asst. Atty. Gen., Michael L. Paup, Daniel F. Ross, and Steven I. Frahm, Attys., Tax Div., Dept. of Justice, Washington, D.C., of counsel, James P. Buchele and Jim J. Marquez, U.S. Attys., Topeka, Kan., on the brief), for defendant-appellant.

L.D. McDonald, Jr., Overland Park, Kan. (Gerald W. Dykes and Cathy G. Zumbehl, Overland Park, Kan., with him on the brief) McDonald & Dykes, Overland Park, Kan., for plaintiff-appellee.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

This appeal involves a claim for refund of federal income taxes paid by Guarantee Abstract & Title Company, Inc. (Guarantee). The amounts at issue were assessed as unreasonable accumulations of earnings by the corporate taxpayer for the years 1969 through 1975 under I.R.C. §§ 531–37.

Guarantee paid the assessments and sued for refund. The case was presented to a jury, which found that the accumulations were for the "reasonable needs of the business," *id.* § 533(a), and gave judgment for Guarantee. On appeal, the government argues that the district court erred in submitting the issue to the jury and erred by not permitting counsel for the United States to examine a slip of paper the taxpayer's witness took from his pocket and glanced at during his testimony.

The government gives two reasons for its assertion that the trial court erred in submitting the unreasonable accumulations issue to the jury. First, it argues that Guarantee's claim for refund did not state all of the grounds asserted at trial as justifications for the accumulations. Second, it argues that the taxpayer did not present sufficient evidence of a "plan" for use of these accumulations or sufficient evidence of the reasonableness of its needs for the money.

The government asserts that the trial court had no jurisdiction to consider the justifications not contained in the claims for refund. The problem is not one of jurisdiction, however. After paying the assessed taxes, the taxpayer filed a claim for refund that stated various reasons for the accumulation.[1] This Court has held that "if the claim fairly apprises the Service of the ground on which recovery is sought or if the Service actually considers the ground later sought to be raised the claim will be held adequate for the purposes of bringing suit . . . ." *Herrington v. United States,*

---

1. The claims for refund filed by the taxpayer provided that:

"Section 531 tax has been assessed by Internal Revenue Service and paid by the taxpayer. The taxpayer did not permit any part of the earnings and profits of the corporation to accumulate beyond the reasonable needs of the business. Guarantee Abstract and Title Company's agency contract with Chicago Title Insurance Company stipulates that the taxpayer has liability exposure on each title policy issued.

The Board of Directors has determined that the corporation must retain reserves to protect the corporation against its uninsurable risks of loss for errors and omissions as an abstractor and agent for Chicago Title Insur-

ance Company. The taxpayer's cash accounts placed with local mortgage institutions provide continuing business relations with taxpayers [sic] customers and provide the necessary reserve for real and potential losses which are not covered by available insurance. As a direct result of these investments the taxpayer's sales have more than doubled and the exposure on the primary liability has increased from $38 million to an amount in excess of $100 million in present outstanding policies.

The action by the Internal Revenue Service refuses to recognize the hazards for which a substantial reserve is necessary to be maintained for the life of the policies in order for this company to remain in business."

416 F.2d 1029, 1032 (10th Cir.1969); *accord Austin v. United States,* 461 F.2d 733, 738 (10th Cir.1972).

Guarantee raised five justifications on which it bases its claim that the earnings accumulation was for reasonable business needs. As is recognized by the government, the language of the refund claim clearly notifies the Internal Revenue Service (IRS) of two of Guarantee's claimed needs: to accumulate reserves to self-insure against risks of loss as an abstractor and title insurance agent, and to evidence financial integrity and generate referral business from the financial institutions in which Guarantee deposited money. We believe that the third and fourth justifications, to have working capital to meet operating expenses, and to self-insure against losses as an escrow agent, are reasonably encompassed in the claim for refund. Reference was made in the claim for refund to the needs of the corporation and remaining in business, which reasonably covers the issue of working capital. The statement in the claim for refund relating to uninsurable risks as an insurance agent and abstractor reasonably covers the escrow claim because acting as an escrow agent is very common for these entities.

More doubtful is whether the claim for refund notified the IRS of Guarantee's accumulation of earnings in order to become a title insurance company, so that it could insure the kinds of risks it currently takes as an agent for Chicago Title Insurance Company. The notice accompanying the claim for refund refers to increases in exposure on Guarantee's "primary liability," and the evidence indicates that the company was a self-insurer for exposures above $100,000 on title policies it wrote, and that there were an increasing number of those large policies. The evidence also indicates that Guarantee ran the risk of being threatened with takeover by Chicago Title if it could not cover its losses. Even if the claim for refund were insufficient, the record supports the taxpayer's contention that the issue of becoming a title insurance company, in addition to the other justifications,

was raised with revenue agents during the audit of the corporation's books that led to the assessment. That justification was also asserted by Guarantee's two shareholders in their depositions taken early in the litigation. In our view, the IRS was sufficiently apprised of all of the claims asserted by Guarantee to justify the accumulations that it could fairly review the claim. The trial court did not err in submitting all of the claimed justifications to the jury.

The government contends that the taxpayer had no plan for the use of the moneys it was accumulating. This Court has made clear the requirement that a taxpayer accumulating earnings have a specific and definite plan for use of those earnings. *See Cheyenne Newspapers, Inc. v. Commissioner,* 494 F.2d 429, 433–34 (10th Cir.1974); *Henry Van Hummell, Inc. v. Commissioner,* 364 F.2d 746, 750 (10th Cir.1966), *cert. denied,* 386 U.S. 956, 87 S.Ct. 1019, 18 L.Ed.2d 102 (1967). The plan must be demonstrated by some objective evidence. *Oklahoma Press Publishing Co. v. United States,* 437 F.2d 1275, 1277 (10th Cir.1971); *Henry Van Hummell,* 364 F.2d at 750. But we do not think it essential that a plan be reduced to writing. *See Hogg's Oyster Co., Inc. v. United States,* 676 F.2d 1015, 1018 (4th Cir. 1982). In closely held corporations, like the one here whose stock is owned entirely by a father and son, the business may be run informally and the corporate minutes may seldom contain formal plans for the use of monies being accumulated by the corporation. In the instant case, there was some evidence of a plan for use of the accumulated earnings. The shareholders and their accountants testified that the earnings had been accumulated for the purposes relied upon in this suit. In addition, a large part of the earnings was retained in the form of cash accounts or certificates of deposit in the local financial institutions rather than in stock market or other longer term investments. Thus, the funds were readily available to apply to operating expenses or policy or litigation losses. While we think it is a close question whether the evidence supported a definite and specific plan for using

the accumulated earnings, we cannot say the evidence was insufficient to submit to the jury.

There was also evidence of the reasonableness of Guarantee's asserted business needs. Accumulations of $191,942 were accepted by the IRS as reasonable in a 1969 tax audit. Considering inflation since 1969, the growth of accumulated earnings had increased only approximately 8% per year. The corporation expanded significantly after that time, issuing many large title policies for which it was self-insurer for all amounts above $100,000. Thus, there was an obvious increase in its risks. While the company's title insurance losses were very small, a major loss of $76,500 was incurred in 1974 for an error made while the company was serving as an escrow agent. Further, because major sources of business for a title insurance and abstracting company are financial institutions who fund mortgages, the accumulation of and holding of accounts or certificates of deposit in those institutions appears a reasonable way of securing business. The jury rendered a general verdict that the accumulations were for the reasonable needs of the business. We believe there is sufficient evidence to sustain the verdict.

We do not think there was any error in the trial court's refusal to order the taxpayer's witness to show the document he glanced at to the government's counsel. The record contains no evidence that the witness relied upon the document in presenting his testimony. The witness glanced at the slip while he was answering a series of questions about his knowledge of Guarantee's unpaid accounts receivable. Apparently just before the witness pulled the slip of paper from his pocket he answered that he did not know the answer to government counsel's question, and he gave the same answer afterwards. Thus, it does not appear that he refreshed his memory by referring to the document. He declared the item was personal and had nothing to do with his testimony. We think the trial court's refusal to permit government counsel to inspect the document was within its discretion and not harmful to the government's case. *See* Fed.R.Civ.P. 61.

AFFIRMED.