**303 WEST 42ND ST. ENTERPRISES, INC., Plaintiff–Counter–Defendant– Appellant,**

**v.**

**INTERNAL REVENUE SERVICE and United States of America, Defendants– Counter–Claimants–Appellees.**

No. 97–6066.

United States Court of Appeals, Second Circuit.

Argued April 28, 1998.

Decided June 18, 1999.

Kevin M. Flynn, New York, N.Y. (Kostelanetz & Fink, LLP, New York, N.Y., Of Counsel), for Plaintiff–Counter–Defendant–Appellant.

Mary Jo White, New York, N.Y., United States District Attorney for the Southern District of New York (Glenn C. Colton, Assistant United States Attorney, Edward A. Smith, Assistant United States Attorney, on the brief), for Defendants–Counter–Claimants–Appellees.

Before: NEWMAN and LEVAL, Circuit Judges, and WEXLER, District Judge.[*]

WEXLER, District Judge:

The Internal Revenue Service ("IRS") assessed a deficiency against plaintiff, operator of an adult entertainment facility known as Show World ("Show World"), for employment taxes relating to performers working in plaintiff's One–on–One fantasy booths ("performers" or "booth performers"). Plaintiff paid part of the tax assessment and instituted this action for refund.

[*] The Honorable Leonard D. Wexler, United States District Judge for the Eastern District of New York, sitting by designation.

The District Court denied plaintiff's motion for summary judgment on the refund claim and granted the cross-motion for summary judgment of defendant United States (the "Government") seeking payment of the balance of the deficiency assessment.

· Plaintiff contends the deficiency was not properly assessed (1) because the booth performers were not employees, and (2) because, even if they were, plaintiff is shielded from liability for past employment taxes by the "safe harbor" provision of section 530 of the Revenue Act of 1978 ("section 530").[1] In general, and subject to certain qualifications, section 530 shields a taxpayer who pays others for services from employment tax liability if the taxpayer has consistently treated them as other-than-employees unless the taxpayer had no reasonable basis for doing so. Such a basis may arise where the industry's practice is to treat such workers as, for example, independent contractors and the employer relies on that practice in so misclassifying its workers. The District Court construed section 530 protection to require reliance on a uniform industry classification and, because the adult entertainment industry does not uniformly place workers like booth performers in a specific category of non-employee, the District Court found section 530 protection unavailable to plaintiff. We reverse and remand for further proceedings.

## BACKGROUND

The facts in this case are essentially undisputed. Plaintiff operates an adult entertainment business located at 303 West 42nd Street in New York City under the name "Show World." Although Show World offers a variety of adult entertainments on its premises, the subject of this appeal concerns what Show World describes as "One–on–One fantasy booths." Within the booths, a single performer (usually a woman) performs a private erotic show requested by a Show World patron.

Each booth is constructed in two parts with a glass partition in the center that separates the performer from the patron and bars physical contact between them. The booth is equipped with a movable privacy shade that covers the glass, telephones on either side of the partition, and a timing device operated by tokens (the "token box") which the patron purchases from Show World. When the patron deposits a token, the shade opens to permit the patron to view the performer and the telephones are activated on both sides of the partition. To keep the shade up and the telephones active, a patron must regularly deposit tokens. The amount of viewing time that a token buys is set by Show World.

Through the telephones, the performer and patron negotiate the content of and the price for the performance, as well as communicate during it. The patron pays the performer for the requested act by passing money through a slot in the booth.

Although the performer retains all of the directly-paid performance fee, the same is not true of the token box receipts. Under written agreements for use of the booths, executed daily by the performers and Show World, the token box receipts are split in a 60%–40% share with the performer receiving the smaller share. These agreements are drafted in the form of a lease with Show World as the landlord and the performer as a renter of the booth. Show World retains the performer's share of the token box receipts from her first day of work as a "security deposit," though the security deposit is returned to the performer if she works through all of the days she books for use of a booth. Thus, two distinct financial transactions take place in the booth: (1) the patron transfers

---

1. Pub.L. No. 95–600, 92 Stat. 2763, 2885–86 (1978) (codified at 26 U.S.C. § 3401 note (1994)) (Controversies Involving Whether Individuals Are Employees for Purposes of Employment Taxes) (as amended).

cash directly to the performer who retains it as a performance fee and (2) the patron transfers tokens to Show World, which, in turn, passes a share to the performer.

The IRS conducted an on-site examination of Show World's fantasy booth operation and concluded that the performers were Show World's employees. On or about November 26, 1991, the IRS sent a letter and examination report ("the Report") to Show World proposing deficiencies for unpaid social security, unemployment taxes, and federal income tax (collectively, "employment taxes"). These deficiencies totaled $268,313.36, plus interest.[2] The liability for employment taxes asserted in the Report covered quarterly and annual tax periods for the years 1989 and 1990. Show World administratively appealed the proposed assessment without success.

On conclusion of the administrative appeals, the IRS sent Show World a notice of employment taxes due for the quarterly tax period October 1, 1989 through December 31, 1989 (the "Notice"), one of the tax periods covered by the Report. The Notice demanded payment of employment taxes and interest in the amounts of $18,-539.57 and $5,757.17, respectively, which totaled $24,296.74.

On or about November 4, 1992, Show World paid the sum of $24,296.74 to the IRS and then filed a timely claim for refund. The IRS failed to act on Show World's refund claim within the six-month period set forth in section 6532(a) of the Internal Revenue Code. As a result, on July 1, 1993, plaintiff commenced this action seeking a refund of the employment taxes paid for the October–December 1989 quarter. The Government filed an answer and counterclaim. The counterclaim sought payment of $249,773.49, representing the balance of the proposed tax assessment set forth in the Report (including accrued interest), plus additional penalties and interest. The parties' claims in this matter are limited to the tax years 1989 and 1990.

In the District Court, Show World moved for summary judgment on its claim for refund of the $24,296.74 it paid the IRS for the October–December 1989 quarter, arguing that it is entitled to the refund because the performers are not employees, but tenants who pay rent pursuant to a lease and because, in any event, it is entitled to section 530's "safe harbor" protection. The Government cross-moved for summary judgment on its counterclaim, contending that the performers are Show World's employees and that Show World was not entitled to safe harbor protection. The District Court applied the common law rules for determining employment status as set forth in the IRS's "twenty factors" test. *See* Rev. Rul. 87–41, 1987–1 C.B. 296, 1987 WL 419174. The District Court found that the performers were Show World's employees and that Show World was not entitled to safe harbor protection. Accordingly, the court denied Show World's motion for summary judgment on the refund claim and entered judgment on the Government's cross-motion for summary judgment on the balance of the deficiency.

## DISCUSSION

### I. *Standard of Review and Show World's Arguments on Appeal*

We review a grant of summary judgment by applying the same standard as the District Court applied, determining de novo whether or not summary judgment is warranted. *Repp v. Webber,* 132 F.3d 882, 889 (2d Cir.1997), *cert. denied,* — U.S. ——, 119 S.Ct. 52, 142 L.Ed.2d 40 (1998). On appeal, Show World again contends that the performers are not its employees

---

**2.** In the context of an employer-employee relationship, employers must withhold social security taxes under the Federal Insurance Contributions Act ("FICA"). *See* 26 U.S.C. § 3101 *et seq.* Unemployment taxes are imposed on the employer under the Federal Unemployment Tax Act ("FUTA"). *See* 26 U.S.C. § 3301 *et seq.*

but its tenants who run their own independent businesses. Show World argues that the District Court's application of the common law test was inappropriate because the performers fall into neither of that test's possible classifications—employee or independent contractor—being tenants who operate their booths under lease.[3] Show World further contends that even if the common law test could be applied to the booth performers, the performers are not employees.

■ We agree with the District Court's rejection of the notion that the booth performers were tenants of Show World. Further, we find no error in the lower court's conclusion that the booth performers were employees of Show World during the relevant time period. We discuss only the question of whether Show World is shielded from tax liability by section 530's safe harbor.

## II. *The Safe Harbor of Section 530 of the Revenue Act of 1978*

### A. *General*

Section 530 provides a "safe harbor" that permits a taxpayer to avoid liability for employment tax for past periods, regardless whether the individuals working for the taxpayer would be properly considered employees. The statute provides, *inter alia*, that "If ... (A) the taxpayer did not treat an individual as an employee for any period, and (B) ... all federal tax returns ... are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee, then ... the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee." § 530(a)(1)(A)-(B).

■ The statute provides a variety of methods by which the employer may establish a reasonable basis for not treating its workers as employees. *See*

§ 530(a)(2)(C). As pertinent here, an employer is treated as having a reasonable basis for not treating an individual as an employee if the employer's tax treatment of the individual was "in reasonable reliance" on a "long-standing recognized practice of a significant segment of the industry in which such individual was engaged." 530(a)(2)(C). The reasonable basis requirement is to be construed liberally in favor of taxpayers. *Boles Trucking, Inc. v. United States*, 77 F.3d 236, 239 (8th Cir.1996).

### B. *Significant Segment of the Industry*

The District Court rejected Show World's safe harbor defense, construing the provision to apply only where the industry uniformly classified its workers as a single type of non-employee and the taxpayer/employer relied in good faith on that classification. 916 F.Supp. at 355. In the District Court's view, the adult entertainment industry was ambivalent about the classification of its workers: some employers classified their workers as tenants while other employers classified the same type of worker as independent contractors. The District Court concluded that, because of this ambivalence, no recognized longstanding industry practice existed and, hence, Show World lacked a reasonable basis under section 530. *Id.* We disagree with the District Court's analysis.

■ By its terms, section 530 states that the reasonable basis requirement may be established through proof of reliance on the classification practice of a "significant segment" of the industry. That phrase cannot plausibly be understood to require uniformity of practice. In requiring a single uniform practice, the District Court relied on *Springfield v. United States*, 873 F.Supp. 1403, 1412 (S.D.Cal.1994). The Ninth Circuit subsequently reversed that determination, expressly noting that "[t]he

---

**3.** Application of the "common law rules for the classification of workers as employees or independent contractors is completely unwar-

ranted herein because the private booth performers are tenants...." Appellant's Brief at 34.

plain language of § 530 makes clear that to demonstrate a reasonable basis for the tax treatment, a taxpayer must prove that a significant segment of the industry follows a particular practice—not that every segment of the industry follows that practice." *Springfield v. United States,* 88 F.3d 750, 754 (9th Cir.1996).

Indeed, before the district court opinion in *Springfield,* it was IRS's position that a uniform industry practice was not a prerequisite for safe harbor protection. *See* Rev. Rul. 82–116, 1982–1 C.B. 152, 1982 WL 196948 (June 7, 1982) ("It is not necessary that the practice be uniform throughout an entire industry"); *accord* Rev. Proc. 85–18, 1985–1 C.B. 518, 1985 WL 279023 (April 1, 1985); Internal Revenue Service Technical Advice Memorandum 9415001, 1992 WL 589711 (April 15, 1994) (citing Rev. Rul. 85–18).[4]

A putative employer in Show World's position may survey its industry, determine that a significant segment of the industry places the same type of worker in a specific classification, and choose that segment's classification practice as its own. *See Springfield,* 88 F.3d at 754 & n. 4 (taxpayer surveyed similar businesses and relied on their practice of treating workers as independent contractors); *accord General Investment Corp. v. United States,* 823 F.2d 337, 341 (9th Cir.1987); *Options for Senior America Corp. v. United States,* 11 F.Supp.2d 666, 669 (D.Md.1998). If the segment is "significant" and the putative employer reasonably relies on the results of its survey in reaching its decision to adopt the segment's specific practice, it is entitled to protection under section 530(a)(2)(C).

**4.** Indeed, shortly after the District Court issued its opinion, Congress clarified the statute by amending section 530 to add that "in no event shall the significant segment requirement of [530(a)(2)(C)] be construed to require a reasonable showing of the practice of more than 25 percent of the industry...." *See* Pub.L. No. 104–188, 110 Stat. 1755, 1766

### C. Reasonable Reliance

In light of its construction of the industry practice requirement, the District Court did not reach the issue of reasonable reliance. It is unclear from the record whether Show World in fact relied on any specific industry practice in reaching its decision to treat its booth performers as non-employee tenants, let alone whether such reliance was reasonable. The affidavit of Show World's president, Thomas Parron, indicates only that operators of fantasy booths like Show World's have not treated their workers as employees and have maintained that practice consistently since 1976. The affidavit indicates neither the specific industry practice Show World relied upon, nor that, in fact, Show World's decision was based on an industry practice. The Government's evidence sheds no light on Show World's reliance either. As discussed below, the Government did not conduct discovery on that issue.

### D. Waiver of the 530 Defense

On appeal, the Government contends, as it did below, that Show World waived its safe harbor defense by failing to give timely notice of the defense. According to the Government, Show World failed to raise the safe harbor defense in its refund claim dated November 17, 1992, and failed to offer it as an affirmative defense to the Government's counterclaim. The Government further contends that it was disadvantaged in not realizing that it needed to take discovery on that issue, an argument it raised in the District Court. The District Court's opinion does not discuss the waiver issue.

■ The Government correctly notes that a prerequisite to a lawsuit seeking a tax refund is a refund claim filed with the

(effective January 1, 1997). Even before the amendment, however, section 530 was broad enough to provide protection even where the industry's practice was fragmented, so long as a significant segment followed a classification practice and the taxpayer/employer relied on that practice.

IRS that sets forth in detail the ground for the refund and facts sufficient to apprise the IRS of the basis for the refund. *See* 26 U.S.C. § 7422(a); 26 C.F.R. § 301.6402–2(b)(1). The taxpayer, however, need only set forth facts in the claim sufficient to enable the IRS to make an intelligent review of the claim. *Scovill Mfg. Co. v. Fitzpatrick,* 215 F.2d 567, 569 (2d Cir.1954); *see also Burlington Northern Inc. v. United States,* 231 Ct.Cl. 222, 684 F.2d 866, 868 (Cl.Ct.1982) (ground for refund must be at least impliedly contained in the application for refund); *Gada v. United States,* 460 F.Supp. 859, 869 n. 5 (D.Conn.1978) (taxpayer need only set forth information sufficient to enable IRS to make intelligent review of claim).

■ Show World's November 17, 1992 refund claim stated that Show World believed that at all pertinent times its booth performers were tenants and self-employed. The IRS contends this was not enough to indicate an intent to claim a section 530 defense. However, the refund claim must be evaluated in light of the administrative proceedings prior to its filing. A claim for refund, even if facially insufficient, provides adequate notice where the ground for refund is raised with the IRS during administrative proceedings. *Guarantee Abstract & Title Co. v. United States,* 696 F.2d 793, 795 (10th Cir.1983).

■ Show World clearly provided the IRS with notice that it would claim a section 530 defense. On or about November 26, 1991, the IRS sent a summary of its employment tax examination to Show World accompanied by a transmittal letter. The transmittal letter advised Show World of its right to file a written protest and statement of its position. Show World's tax attorney, Leonard Bailin, did so via a letter dated December 23, 1991 to the IRS's District Director. The protest letter expressly referenced the examination summary and stated: "The procedure followed by the taxpayer corporation has been in effect for many years and is common in the industry. The taxpayer contends that its position in this matter is sustained by Act [sic] Section 530 of the Internal Revenue Act of 1978." Indeed, by letter dated just three days later, December 26, 1991, the IRS revenue officer who conducted the employment tax examination acknowledged Show World's section 530 defense and sought further factual information in order to respond.[5] Accordingly, the IRS had fair notice of Show World's intent to claim section 530's safe harbor in its refund claim.

■ The Government's contention that Show World waived the benefits of the safe harbor rule by failing to raise it as an affirmative defense to the counterclaim stands on somewhat different ground. Show World's urgings to the contrary, a plaintiff in a refund action must raise the safe harbor provisions as an affirmative defense when the IRS seeks the balance of a deficiency via a counterclaim. *See Moore v. U.S.,* 1992 WL 220913, at *7 (1992). Show World did not raise the safe harbor provision as an affirmative defense. The parties briefed this issue below but the District Court's opinion is silent. To bar Show World from raising the safe harbor provision against the counterclaim while permitting it in the refund claim would elevate form over substance. Since the parties have fully briefed the issue, we deem Show World to have amended its answer to the Government's counterclaim to raise safe harbor as an affirmative defense.

---

5. The letter sought the following information: the specific industry at issue; the number of industries working in the industry and the source of this information; the names of businesses that treat the relevant class of workers as independent contractors and how long they have done so; the date the taxpayer began treating its workers as independent contractors; and photocopies of information provided by an industry or trade association if taxpayer relied upon such entity's direction.

Given the meager evidence set forth by Show World regarding its reliance on industry practice coupled with the Government's failure to take discovery on the issue due to Show World's barely adequate statement of its defense, we remand to the District Court to allow additional discovery on the reliance issue, both factual reliance and its reasonableness, and to determine whether there exists a genuine issue of material fact precluding summary judgment.

## III. *Error in Entering Judgment on the Counterclaim*

Finally, Show World contends that the District Court erred in awarding $474,-502.73 against it in its judgment in favor of the Government's counterclaim, noting that the Government lost the administrative file and is unable to establish the foundation or validity of the employment tax calculations. Given our resolution of the safe harbor defense, we need not reach this issue.

## *CONCLUSION*

Show World's booth performers are its employees under the federal employment tax statutes. Show World is liable for the unpaid taxes unless it qualifies for termination of liability under the safe harbor defense by showing that it reasonably relied on industry practice in treating its performers as non-employee tenants. The record before us is inadequate to determine whether Show World reasonably relied on industry practice. Accordingly, we reverse the District Court's denial of Show World's motion for summary judgment, reverse its grant of the Government's motion for summary judgment on its counterclaim, and remand for further development of the record consistent with this opinion.