**Joseph CARIONE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CV 01–3936DRHMLO.**

United States District Court, E.D. New York.

Aug. 27, 2003.

Kase & Druker by James O. Druker, Esq., Paula Schwartz Frome, Esq., Garden City, NY, for Plaintiff.

United States Department of Justice—Tax Division by Alan M. Shapiro, Esq., Lara E. Ewens, Esq., Washington, DC, for Defendant.

United States Attorney Office—Eastern District of New York by Kevin P. Mulry, Esq., Central Islip, NY, for Defendant.

### MEMORANDUM & ORDER

HURLEY, District Judge.

Plaintiff Joseph Carione ("Carione") initiated this action, pursuant to 26 U.S.C. § 7422, for refund of the amount of tax assessed against the proceeds from the sale of a business. Defendant United States ("Defendant") subsequently filed a motion for summary judgment. Plaintiff filed a cross-motion for summary judgment. For the reasons discussed *infra,*

Plaintiff's motion is denied and Defendants' motion is granted.

## I. Background.

In deciding a summary judgment motion, the Court may properly consider the documents set forth in Rule 56(c), including pleadings, depositions, affidavits, answers to interrogatories, and admissions. Moreover, the Court may consider statements submitted pursuant to Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1"). *See Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 72 (2d Cir.2001). The facts listed below are culled from those properly considered documents.

### A. Background of the Criminal Action and Forfeiture.

During the 1990's, Carione owned two garbage hauling corporations: Grand Carting, Inc. ("Grand Carting") and Kingsway Removal, Inc. ("Kingsway"). (Grand Carting was organized as an "S" Corporation under New York law.) Carione, the president and chief operating officer of both Grand Carting and Kingsway, directed their operation from a building located at 98 Kean Street, West Babylon, New York ("98 Kean Street Property"). Carione and his brother co-owned the 98 Kean Street Property.

In 1996, Carione and the Grand Carting corporation were indicted, along with several other garbage removal services and their owners, for money laundering, money laundering conspiracy and other crimes under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *See generally United Stated v. Hickey, et al.,* 96–CR–693. In the indictment, the United States indicated its intention to seek forfeiture against each of the defendants.

On September 10, 1996,[1] the Court issued an "Ex–Parte Post–Indictment Restraining Order." Insofar as relevant for the Court's present purposes, this order (1) restrained the alienation, encumbrance, concealment or sale of Grand Carting's property and assets other than in the ordinary course of business, (2) restrained Carione and his relatives from in any way alienating, encumbering, concealing or selling the property and assets of Grand Carting other than in the ordinary course of business and (3) appointed the United States Marshall's Service to "monitor" Grand Carting to ensure that its assets "[we]re not sold, dissipated or wasted during the pendency of th[e] restraining order."

The power to monitor included the power to review and inspect all document relating to the operation of the Grand Carting, to enter the premises and observe the operation of the defendant corporation, to interview employees and to petition the Court if access was denied by Grand Carting. During the pendency of this restraining order as well as its concomitant monitoring, no objections were made by the United States to any disbursements made by Grand Carting. This included cost-cutting measures such as when Carione and Grand Carting suspended use of a carting truck and removed a position from the payroll. Carione and Grand Carting were not required to obtain permission prior to these actions.

Also during the pendency of this restraining order, Carione approached Waster Management, Inc. ("WM"), an international waste disposal company, to negotiate the sale of Grand Carting and Kingsway, the company that was not involved in the

---

1. This order was amended on September 11, 1996, to reinsert two paragraphs that had inadvertently been struck from the September 10, 1996, Order.

criminal indictment. The U.S. Marshals were not involved in this negotiating process. Eventually Carione and WM reached an agreement regarding the purchase of Grand Carting and Kingsway. Carione signed the agreement on January 19, 1998.

On March 30, 1998, the Court approved this agreement subject to the following conditions. First, proceeds received at the closing of this contract were required to be deposited in escrow with the Clerk of Court. These monies could only be removed by order of the Court after ten days advance notice to the Untied States. Second, all assets that were expressly excluded from the contract were required to be inventoried and ·if these additional assets were in the form of cash they were required to be deposited in the same escrow account with the Clerk of Court. Third, ten days prior to the closing, Carione was required to provide the United States with all documents prepared in connection with the closing process. The closing took place on May 5, 1998. WM paid the proceeds from this sale directly to the Clerk of Court for deposit in an escrow account. At some point thereafter, Carione and his brother sold the 98 Kean Street Property to a buyer other than WM.

On February 12, 1999, Carione and his co-defendants in the criminal proceedings entered into a Consent Order of Forfeiture. This Order, stated that the defendants had agreed "to forfeit to the United States ... six million nine hundred thousand seven hundred twenty-one dollars and no cents ($6,900,721.00) (the "Forfeiture Judgment"), to be paid as soon as reasonably possible, but in no event later than July 1, 2000." Consent Order of Forfeiture ¶ 1. "In the event that the Forfeiture Judgment [wa]s not fully paid by July 1, 2000, the government may in its sole discretion sell, and/or forfeit and sell, all property restrained in this matter, including the proceeds of the sale of Grand Carting, Inc., which shall be held in escrow until the Forfeiture Judgment is satisfied, or until July 1, 2000, whichever is earlier." *Id.* ¶ 5. On August 9, 2000, the Court issued an order directing that the proceeds of the sale of Grand carting and the 98 Kean Street Property be transferred to the Asset Forfeiture Fund for settlement of the Forfeiture Order.

B. The Relevant Tax Filings and Procedural History.

Carione paid taxes for Grand Carting as a "S" Corporation pass-through entity. In accordance with the federal tax laws, Carione reported all pass-through income on his individual tax return. *See* 26 U.S.C. §§ 1362, 1366. Carione filed his 1998 tax return on October 18, 1999. On that return, Carione included the proceeds from the 98 Kean Street and Grand Carting sales in his gross income for 1998. Based upon the information supplied in that return, Carione paid 1998 tax liability on September 18, 2000.

On November 2, 2000, Carione filed an amend federal income tax return for 1998. In that return Plaintiff stated that:

Taxpayer's accountant incorrectly included a capital gain from the sale of a carting company in which taxpayer had an interest, whereas in fact, this corporation was not sold in 1998. The taxable event, if any, should occur in the year 2000.

*See* Carione Aff., Exhibit N. The amended return contained no further discussion of the reason for the amendment.

On June 7, 2001, more than six months after the filing of the amended return, Carione initiated this action, pursuant to 26 U.S.C. § 7422, for refund of the amount of tax assessed against the proceeds from

the sale of Grand Carting. In the Complaint, Carione alleged that he "is entitled to a refund because the gain from the sale of Grand Carting, Inc.[,] was erroneously included in his income. Since the company and the proceeds were forfeited to the United States, Mr. Carione is not liable to pay taxes on the gain." Complaint § 13. On September 6, 2002, while the instant cross-motions for summary judgment were still being briefed, "Carione filed an amended claim for a refund" with the Internal Revenue Service. Carione's Opposition Memorandum at 4–5.[2] This further amended claim added the following language:

> In light of the fact that both the business and the proceeds from the sale of the business were forfeited to the United States Government by Court Order, taxpayer never had any dominion or control of said proceeds and, accordingly, did not realize any benefit therefrom.

*Id.* at 5.

On October 31, 2002, the Court received the parties' fully briefed cross-motions for summary judgment.

## II. Discussion.

### A. The Summary Judgment Standard.

Summary judgment may be granted only when it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). The moving party bears the initial burden "of showing the absence of a genuine issue as to any mate-

rial fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Once the moving party has come forward with support demonstrating that no genuine issue of material fact remains to be tried, the non-moving party "must come forward with affidavits, depositions, or other sworn evidence as permitted by Fed. R.Civ.P. 56, setting forth specific facts showing that there exists a genuine issue of material fact." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir.1996). In reviewing these materials, the Court "is required to draw all factual inferences in favor of, and take all factual assertions in the light most favorable to, the party opposing summary judgment." *Id.*

The instant cross-motions raise a question of subject matter jurisdiction. Subject matter jurisdiction "is not waivable and may be raised at any time by a party or by the court sua sponte. If subject matter jurisdiction is [found to be] lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–701 (2d Cir.2000). The Court therefore must first consider the question of subject matter jurisdiction before it reaches the merits of the refund claim or its factual support.

### B. The Variance Doctrine and Subject Matter Jurisdiction.

The United States, as sovereign, may not be sued without its consent. *See United States v. Dalm*, 494 U.S. 596, 608, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990). Thus, all suits brought against the United States must comply with the terms of the statute pursuant to which the government has consented to be sued. *See Lehman v.*

---

**2.** The Court has reviewed the submitted documents and cannot find a copy of the actual amended claim.

*Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981). In the instant context, actions against the United States for tax refunds may be brought under a narrowly construed set of guidelines set forth in 26 U.S.C. § 7422(a) and its accompanying guidelines.

■■■ "The Government correctly notes that a prerequisite to a [Section 7422] lawsuit seeking a tax refund is a refund claim filed with the I[nternal] R[evenue] S[ervice at least six months prior to initiation of the action] that sets forth in detail the ground for the refund and facts sufficient to apprise the IRS of the basis for the refund." *303 West 42nd St. Enterprises, Inc. v. I.R.S.,* 181 F.3d 272, 277–278 (2d Cir.1999) (citing 26 U.S.C. § 7422(a); 26 C.F.R. § 301.6402–2(b)(1)). The failure to file a sufficient claim divests the district court of subject matter jurisdiction. *See Kirsh v. United States,* 258 F.3d 131, 132 (2d Cir. 2001). Moreover, in the later civil action, "a taxpayer may not raise different grounds than those brought to the IRS." *Magnone v. United States,* 902 F.2d 192, 193 (2d Cir.1990). This is known as the variance doctrine. In the instant case, the parties do not dispute that Carione's amended return constituted a claim. *See* 26 C.F.R. § 301.6402–3(a)(2). Rather, they dispute whether the argument raised in the instant action impermissibly varies from the prior submitted claim for refund.

■■ "[T]he 'variance doctrine' bars a taxpayer from raising issues in a suit against the United States that were not first raised in a claim for refund." *Stern v. United States,* 949 F.Supp. 145, 146 (E.D.N.Y.1996). "The taxpayer ... need only set forth facts in the claim sufficient to enable the IRS to make an intelligent review of the claim." *303 West,* 181 F.3d at 278. However, the grounds for the refund must be at least impliedly contained in the application for refund. *Bur-*

*lington Northern Inc. v. United States,* 231 Ct.Cl. 222, 684 F.2d 866, 868 (1982); *see also Niagara Mohawk Power Corp. v. United States,* 207 Ct.Cl. 576, 525 F.2d 1380, 1387 (1975).

Carione's claim to the IRS stated that:

Taxpayer's accountant incorrectly included a capital gain from the sale of a carting company in which taxpayer had an interest, whereas in fact, this corporation was not sold in 1998. The taxable event, if any, should occur in the year 2000.

*See* Carione Aff., Exhibit N. Meanwhile, the Complaint states that Carione

is entitled to a refund because the gain from the sale of Grand Carting, Inc.[,] was erroneously included in his income. Since the company and the proceeds were forfeited to the United States, Mr. Carione is not liable to pay taxes on the gain.

Complaint § 13.

As an initial matter, the Court considers whether Carione's previously mentioned September 6, 2002, further amendment to his administrative refund claim (*supra* at 6) effectively and retroactively altered the original administrative refund claim to the IRS. Carione cites two cases in support of the contention that the September 6, 2002, amendment should control: *George Moore Ice Cream Co. v. Rose,* 289 U.S. 373, 53 S.Ct. 620, 77 L.Ed. 1265 (1933) and *McKesson & Robbins v. Edwards,* 57 F.2d 147 (1932). These cases fail to persuade the Court. *George Moore* involved an amendment that was made prior to administrative review by the Internal Revenue Service and more than three years prior to initiation of the suit. 289 U.S. at 375–376, 53 S.Ct. 620. Although it necessarily involved different dates, *McKesson,* like the *George Moore* case, also involved a claim and a subsequent amended claim that pre-

ceded a later-filed complaint. 57 F.2d at 150. Unlike those two cases, Carione amended his administrative refund claim to the IRS after filing his complaint and *during the briefing of the instant cross-motions*, which denied the Internal Revenue Service any opportunity to conduct meaningful review of the amended claim prior to this action. In short, Carione has failed to provide the Court with any persuasive case law or arguments that he should be allowed to retroactively amend his claims with the Internal Revenue Service during the pendency of the instant action. This conclusion is amply supported by the fact that the purpose of the administrative refund claim requirement is to allow the meaningful review of claims *prior* to initiation of a federal action. *See 303 West*, 181 F.3d at 277–278. Allowing the type of retroactive amendment urged by Carione would defeat that acknowledged purpose. The Court therefore only considers the statements in the original administrative refund claim (the November 2, 2000, amended return) and the Complaint to determine whether they impermissibly vary.

A fair reading of the two passages reveals Carione's unchanging contention that the amounts from the sale of a carting business were erroneously included. Therefore, the IRS was on notice that the specific sale was in question. Despite this similarity, the theories differ between the administrative refund claim and the Complaint. The amended return clearly states that the sale of the carting company was included in the wrong year, whereas the Complaint clearly states that, "[s]ince the company and the proceeds were forfeited to the United States, Mr. Carione is not liable to pay taxes on the gain." The

theory in the complaint, i.e. that there is no tax liability for this sale, is distinct from the argument advanced in the administrative refund claim that the proceeds were included in the incorrect year. Therefore, the first sentence of the amended return states a different theory than that which is advanced in the instant action. Nonetheless, the Court's analysis does not end with the first sentence of these two statements.

The final sentence of the terse statement contained in the amended tax return states that: "The taxable event, *if any*, should occur in the year 2000." *See* Carione Aff., Exhibit N (emphasis added). This language, "if any," could suggest that the status of the sale as a taxable event was also called into question. However, this phrase, "if any," is the only language in the administrative refund claim that even suggests that a taxable event may not have occurred. Moreover, notably missing from the amended return is any mention of *why* the proceeds were non-taxable as opposed to erroneously included in the incorrect year.

As stated earlier, a proper claim must "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." 26 C.F.R. § 301.6402–2(b); *see also 303 West*, 181 F.3d at 277–278. The language of Carione's administrative refund claim, viewed collectively, sufficiently[3] "apprised" the IRS that a year 2000 sale was incorrectly included in a the 1998 return due to error by an accountant. However, as noted *supra* at 11, only the phrase "if any" referred to the possibility that no taxable event had occurred. This phrase "if any," standing alone, failed to "set forth in detail each ground upon which a credit or refund is

---

**3.** Carione now states that this initial contention was incorrect. *See* Carione's Oppositon Memorandum at 3–4 ("Clearly, the claimant

misspoke in stating that the sale did not take place in 1998 . . . .").

claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." 26 C.F.R. § 301.6402–2(b). Specifically, the "if any" phrase, even evaluated in the context of the entire administrative refund claim, failed to indicate that the proceeds of the sale were placed in escrow, that the escrow account was required by court order, that a restraining order affected Carione's ability to freely sell Grand Carting, that the funds were never paid directly to Carione or that those circumstances, combined with any other relevant circumstances, combined to create a situation where he never had control or dominion over the proceeds of the sale. In other words, the grounds advanced in the Complaint as the basis for the claimed refund were omitted from the administrative refund claim.

These omissions violated the Internal Revenue Service's regulation regarding the detail required in claims for refund. *See* 26 C.F.R. § 301.6402–2(b). The Internal Revenue Service is entitled to insist on full compliance with this mandated level of detail, which allows the agency an adequate opportunity to investigate the legal and factual bases of the claim and to resolve the claim. *See Angelus Milling Co. v. Commissioner*, 325 U.S. 293, 296, 65 S.Ct. 1162, 89 L.Ed. 1619 (1945); *Stern v. United States*, 949 F.Supp. 145, 149 (E.D.N.Y.1996). Because the administrative refund claim failed to meet the relevant requirements, it did not allow a meaningful review of the theory that no taxable event occurred. As such, the Court is unpersuaded by Carione's argument that the phrase "if any," as it was presented in his administrative refund claim, put the Internal Revenue Service on notice of the theory advanced in the Complaint.[4]

■ Carione contends that his ultimate position in this action is consistent with the broad language of the claim. On an abstract, purely intellectual, level, this may be true. After all, the "if any" language does not preclude a challenge to the validity of the sale as a taxable event. Nonetheless, Carione's argument omits the fact that the variance doctrine does not concern itself solely with semantics. Instead, the variance doctrine centers on whether the claim presented to the district court was previously submitted to the Internal Revenue Service in a manner that enabled "an intelligent administrative review of the claim." *Scovill Manufacturing Co. v. Fitzpatrick*, 215 F.2d 567, 569 (2d Cir. 1954). As discussed *supra*, the "if any" language that was contained in the administrative refund claim, without more, did not allow such an intelligent review of the claim. As Plaintiff has not meaningfully raised the instant theory in the appropriate manner before the Internal Revenue Service, that theory impermissibly varies from the theory contained in the administrative refund claim. Accordingly, the Court lacks subject matter jurisdiction over this action.

C. The Merits of Plaintiff's Claim.

As the Court concludes that it lacks subject matter jurisdiction, the Court does not reach the merits of Plaintiff's claims.

III. **Conclusion.**

For the reasons discussed above, summary judgment is GRANTED for Defendant on the basis that the Court lacks subject matter jurisdiction. Conversely,

---

4. The argument that the Internal Revenue Service should have deduced Carione's argument from the circumstances is similarly unavailing. *See Weisbart v. U.S. Dept. of Trea-* *sury*, 222 F.3d 93, 99 (2d Cir.2000) ("The [Internal Revenue] Service is not expected to be Sherlock Holmes.").

Carione's cross-motion for summary judgment is DENIED. The Clerk of Court is directed to CLOSE this case.

**SO ORDERED.**

### JUDGMENT

A Memorandum and Order of Honorable Denis R. Hurley, United States District Judge, having been filed on August 27, 2003, granting defendant's motion for summary judgment based on lack of subject matter jurisdiction, and denying plaintiff's motion for summary judgment, it is

**ORDERED AND ADJUDGED** that plaintiff take nothing of defendant; that defendant's motion for summary judgment is granted; and that plaintiff's motion for summary judgment is denied.